## Case No. 14-40003

## IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

MARC VEASEY; JANE HAMILTON; SERGIO DELEON; FLOYD CARRIER; ANNA BURNS; MICHAEL MONTEZ; PENNY POPE; OSCAR ORTIZ; KOBY OZIAS; LEAGUE OF UNITED LATIN AMERICAN CITIZENS; JOHN MELLOR-CRUMLEY; DALLAS COUNTY, TEXAS,

*Plaintiffs – Appellees,*

v.

RICK PERRY, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF TEXAS; ET AL,

*Defendants,*

UNITED STATES OF AMERICA,

*Plaintiff – Appellee,*

TEXAS LEAGUE OF YOUNG VOTERS EDUCATION FUND; IMANI CLARK; TEXAS ASSOCIATION OF HISPANIC COUNTY JUDGES AND COUNTY COMMISSIONERS; AURICA WASHINGTON; CRYSTAL OWENS; MICHELLE BESSIAKE; MARIA LONGORIA BENEVIDES,

*Intervenor Plaintiffs – Appellees,*

v.

STATE OF TEXAS; ET AL,

*Defendants,*

TRUE THE VOTE,

*Movant – Appellant.*

On Appeal from the U.S. District Court for the Southern District of Texas, Corpus Christi Division — USDC No. 2:13-cv-00263 cons w/ USDC No. 2:13-cv 00193

## BRIEF FOR MOVANT-APPELLANT TRUE THE VOTE

Joseph M. Nixon
N. Terry Adams, Jr.
Kelly H. Leonard
BEIRNE, MAYNARD & PARSONS, LLP
1300 Post Oak Blvd, Suite 2500
Houston, Texas  77056
(713) 623-0887  Tel.
(713) 960-1527  Fax

James E. "Trey" Trainor, III
BEIRNE, MAYNARD & PARSONS, LLP
401 W. 15th Street, Suite 845
Austin, Texas  78701
(512) 623-6700  Tel.
(512) 623-6701  Fax

Counsel for Movant-Appellant

## CERTIFICATE OF INTERESTED PERSONS

In accordance with Fifth Circuit Rule 28.2.1, the undersigned counsel certifies that the following persons and entities have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1. True the Vote, a registered 501(c)(3) corporation with no parent corporation or publically held corporation owning more than 10% of stock, *Movant-Appellant*;

2. Joseph M. Nixon, N. Terry Adams, Jr., James Edwin Trainor, III ("Trey"), Kelly Hunsaker Leonard, and Beirne, Maynard & Parsons, LLP, *counsel for Movant-Appellant True the Vote*;

3. United States of America, *Plaintiff-Appellee*;

4. Erin Helene Flynn, Anna Baldwin, Diana Katherine Flynn, and United States Department of Justice, *counsel for Plaintiff-Appellee United States of America*;

5. John Albert Smith, III and United States Attorney's Office, Southern District of Texas*, counsel for Plaintiff-Appellee United States of America*;

6. Marc Veasey; Jane Hamilton; Sergio DeLeon; Floyd Carrier; Anna Burns; Michael Montez; Penny Pope; Oscar Ortiz; Koby Ozias; League of United Latin American Citizens; John Mellor-Crumley; Dallas County, Texas, *Plaintiffs-Appellees*;

7. Chad Wilson Dunn and Brazil & Dunn, *counsel for Plaintiff-Appellees Marc Veasey; Jane Hamilton; Sergio DeLeon; Floyd Carrier; Anna Burns; Michael Montez; Penny Pope; Oscar Ortiz; Koby Ozias; League of United Latin American Citizens; John Mellor-Crumley; Dallas County, Texas*;

8. Imani Clark, *Intervenor Plaintiff-Appellee*;

9. Ryan Paul Haygood, Leah Camille Aden, Natasha M. Korgaonkar, Christina Swarns, and NAACP Legal Defense & Education Fund, Inc., *counsel for Intervenor Plaintiff-Appellee Imani Clark*;

10. Texas Association of Hispanic County Judges and County Commissioners; Maria Longoria Benavides, *Intervenor Plaintiff-Appellees*;

11. Rolando Leo Rios, I, *counsel for Intervenor Plaintiff-Appellees Texas Association of Hispanic County Judges and County Commissioners; Maria Longoria Benavides*;

12. Texas League of Young Voters Education Fund, *Intervenor Plaintiff-Appellee*;

13. Ryan Paul Haygood, Leah Camille Aden, Natasha M. Korgaonkar, Christina Swarns, and NAACP Legal Defense & Education Fund, Inc., *counsel for Intervenor Plaintiff-Appellee Texas League of Young Voters Education Fund*;

14. Gerard J. Sinzdak and Wilmer, Cutler, Pickering, Hale & Dorr, L.L.P., *counsel for Intervenor Plaintiff-Appellee Texas League of Young Voters Education Fund*;

15. Aurica Washington; Crystal Owens; Michelle Bessiake, *Intervenor Plaintiff-Appellees*;

16. Ryan Paul Haygood, Leah Camille Aden, Natasha M. Korgaonkar and NAACP Legal Defense & Education Fund, Inc., *counsel for Intervenor Plaintiff-Appellees Aurica Washington; Crystal Owens; Michelle Bessiake*;

17. State of Texas, *Defendant*;

18. Rick Perry, in his Official Capacity as Governor of Texas, *Defendant*;

19. John Steen, in his Official Capacity as Texas Secretary of State, *Defendant*;

20. Steve McCraw, in his Official Capacity as Director of the Texas Department of Public Safety, *Defendant*;

21. Arthur D'Andrea, Gregory David Whitley, John Reed Clay, Jr., John Barret Scott, Jonathan F. Mitchell, Sean Flammer, Stephen Ronald Keister, and Texas Attorney General's Office, *counsel for Defendants*;

22. The Honorable Judge Nelva Gonzales Ramos, United States District Judge, Southern District of Texas.


/s/    *Kelly Hunsaker Leonard*
Kelly Hunsaker Leonard

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is requested in this matter. *See* 5TH CIR. R. 28.2.3. This appeal involves the denial of True the Vote's motion to intervene as a matter of right in a case brought by the United States, individuals, and public interest groups challenging Texas' Photographic Voter Identification Law, "SB 14," under section 2 of the Voting Rights Act, the Fourteenth Amendment, and the Fifteenth Amendment.

The district court permitted intervention by several individuals and public interest groups as plaintiffs, but denied True the Vote's right to intervene as a defendant—even though True the Vote demonstrated all of the requirements of Rule 24(a). FED. R. CIV. P. 24(a).  True the Vote believes oral argument would assist the Court in its deliberations on this case.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................ii

STATEMENT REGARDING ORAL ARGUMENT ................................. v

TABLE OF CONTENTS ........................................................... vi

TABLE OF AUTHORITIES................................................viii

RECORD EXCERPTS ............................................................xi

STATEMENT OF JURISDICTION ........................................ 1

ISSUES PRESENTED ...........................................................2

STATEMENT OF THE CASE ............................................... 2

    A. Texas' Voter ID Law-SB 14 ........................................3

    B. The underlying litigation............................................5

    C. True the Vote successfully campaigned for the creation and passage of SB 14 ..................................................6

    D. True the Vote's support for SB 14 is already part of this litigation.......................................................8

    E. True the Vote is denied the right to intervene ...........................9

SUMMARY OF THE ARGUMENT ........................................10

ARGUMENT ....................................................................11

I.   True the Vote is entitled to intervene as a matter of right...............11

    A.   The district court failed to conduct a practical analysis of the facts and circumstances surrounding this case................ 13

    B.   True the Vote has a particularized interest in SB 14 and in protecting the integrity of elections in Texas that easily supports intervention in this public interest case.................. 15

C.  True the Vote's interest in SB 14 and in protecting the
    integrity of elections in Texas would be seriously impaired
    by an adverse decision in this case ........................................ 21

D.  True the Vote's interests are not adequately represented
    by the State of Texas ................................................................ 23

CONCLUSION AND PRAYER FOR RELIEF ...................................... 28

CERTIFICATE OF SERVICE ................................................................. 30

CERTIFICATE OF COMPLIANCE ....................................................... 31

# TABLE OF AUTHORITIES

## Cases

*Brumfield v. Dodd,*
__F.3d __, 2014 WL 1395663 (5th Cir. 2014)...............................passim

*City of Houston v. American Traffic Solutions, Inc.,*
668 F.3d 291 (5th Cir. 2012) ......................................................... 15-18

*Coalition of Arizona/New Mexico Counties v. Dep't of Interior,*
100 F.3d 837 (10th Cir. 1996) ............................................................. 17

*Crawford v. Marion County Election Bd.,*
553 U.S. 181, 128 S. Ct. 1610 (2008) .................................................... 7

*Gray ex rel. Rudd v. Beverly Enters.-Miss. Inc.,*
390 F.3d 400 (5th Cir. 2004) ................................................................ 5

*Mississippi State Chapter Operation Push, Inc. v. Mabus,*
932 F.2d 400 (5th Cir. 1991)............................................................... 27

*New Mexico Off-Highway Vehicle Alliance v. U.S. Forest Serv.,*
540 F. App'x 877 (10th Cir. 2013) ....................................................... 17

*Perry v. Perez,*
132 S. Ct. 934 (2012) ............................................................................ 5

*Sagebrush Rebellion, Inc. v. Watt,*
713 F.2d 525 (9th Cir. 1983) .............................................................. 17

*Sepulvado v. Jindal,*
739 F.3d 716 (5th Cir. 2013) ................................................................ 5

*Shelby County v. Holder,*
133 S. Ct. 2612 (2013) .................................................................passim

*Sierra Club v. Espy,*
18 F.3d 1202 (5th Cir. 1994) .............................................................. 12

*Sierra Club v. Glickman,*
82 F.3d 106 (5th Cir. 1996) ........................................................... 23-24

*Stephanie Odle v. Wal-Mart Stores, Inc.*,
  No. 13-10037, __F.3d __, 2014 WL 1282753 (5th Cir. 2014) ................. 5

*Texas v. Holder*,
  133 S. Ct. 2886 (2013) ............................................................................ 5

*Texas v. Holder*,
  888 F. Supp. 2d 113 (D.C.D.C. 2012) ................................................. 5, 8

*United States v. Florida*,
  No. 4:12-cv-285, Slip Op. at 3-4 (N.D. Fla. Nov. 6, 2012)...10, 13, 14, 15

*United States v. Texas Eastern Transmission Corp.*,
  923 F.2d 410 (5th Cir. 1991) ................................................................ 12

*Utah Ass'n of Counties v. Clinton*,
  255 F.3d 1246 (10th Cir. 2001) ............................................................ 17

*Washington State Bldg. & Const. Trades Council, AFL-CIO v. Spellman*,
  684 F.2d 627 (9th Cir. 1982) ................................................................ 17

## Statutes

Tex. Elec. Code § 63.001(g) ...................................................................... 4

Tex. Elec. Code § 63.001(h) ...................................................................... 4

Tex. Elec. Code § 63.0101 ....................................................................... 3-4

Tex. Elec. Code §63.011 ............................................................................ 4

Tex. Elec. Code §65.054 ............................................................................ 4

Tex. Elec. Code §65.0541 .......................................................................... 4

Tex. Elec. Code § 82.001-82.004 .............................................................. 4

Tex. Transp. Code § 521A.001(e) ............................................................. 4

## Rules

Fed. R. App. P 8(a)(2) .............................................................................. 29

Fed. R. Civ. P. 24(a) ......................................................................... passim

FED. R. EVID. 201(b) ........................................................................ 5

## Other Authorities

Charles A. Wright & Arthur R. Miller, 21B FED. PRAC. &
 PROC. § 51.06.4 ......................................................................... 5

## RECORD EXCERPTS

| TAB | DOCUMENT | ROA PAGE # |
|-----|----------|------------|
| 1 | Docket Sheet, *Veasey v. Perry* (No. 2:13-cv-193). | (ROA.1). |
| 2 | Docket Sheet, *United States v. Texas* (No. 2:13-cv-263). | (ROA.6050). |
| 3 | Notice of Appeal, filed December 13, 2013. | (ROA.1380). |
| 4 | Notice of Appeal, filed December 20, 2013. | (ROA.1447). |
| 5 | Order Denying Intervention, entered December 11, 2013. | (ROA.1357). |
| 6 | Order Denying Intervention in *United States v. State of Florida*; No 4:12-cv-285, Slip Op., (N.D. Fla. Nov. 6, 2012). | (ROA. 630). |
| 7 | Excerpts from United States' Proposed Findings of Fact and Conclusions of Law filed in *Texas v. Holder*, 888 F. Supp. 2d 113 (D.C.D.C. 2012). | *See* footnote 4 at page 5 of Movant-Appellant's Brief. |
| 8 | Excerpts from Attachment 2 to Joint Appendix filed in *Texas v. Holder*, 888 F. Supp. 2d 113 (D.C.D.C. 2012)-(Testimony of True the Vote's Founder, Catherine Engelbrecht, to the Texas Legislature in Support of SB 14). | *See* footnote 4 at page 5 of Movant-Appellant's Brief. |
| 9 | Excerpts from Attachment 10 to Joint Appendix filed in *Texas v. Holder*, 888 F. Supp. 2d 113 (D.C.D.C. 2012)-(Testimony of True the Vote poll-watcher, Alan Vera, to the Texas Legislature in Support of SB 14). | *See* footnote 4 at page 5 of Movant-Appellant's Brief. |

| 10 | Excerpts from Attachment 11 to Joint Appendix filed in *Texas v. Holder*, 888 F. Supp. 2d 113 (D.C.D.C. 2012)-(Testimony of Representative Veasey to the Texas Legislature Regarding SB 14). | *See* footnote 4 at page 5 of Movant-Appellant's Brief. |
|----|----|----|
| 11 | Excerpts from United States' Trial Exhibit List filed in *Texas v. Holder*, 888 F. Supp. 2d 113 (D.C.D.C. 2012). | *See* footnote 4 at page 5 of Movant-Appellant's Brief. |
| 12 | United States' Trial Exhibit No. 97 (Proposal for Texas Voter ID Law to the Texas Legislature by King Street Patriots and True the Vote) filed in *Texas v. Holder*, 888 F. Supp. 2d 113 (D.C.D.C. 2012). | *See* footnote 4 at page 5 of Movant-Appellant's Brief. |
| 13 | United States' Trial Exhibit No. 388 (Email from True the Vote's Founder, Catherine Engelbrecht, to Texas State Senator Fraser regarding SB 14) filed in *Texas v. Holder*, 888 F. Supp. 2d 113 (D.C.D.C. 2012). | *See* footnote 4 at page 5 of Movant-Appellant's Brief. |

# STATEMENT OF JURISDICTION

(1) *Basis for the district court's subject-matter jurisdiction*: 28 U.S.C. § 1331. The Original Complaint alleges causes of action under the Voting Rights Act.

(2) *Basis for the Fifth Circuit's jurisdiction*: 28 U.S.C. § 1291. Movant-Appellant True the Vote timely appealed from the district court's order denying its motion for intervention. (RE.3,4). The denial of intervention as a matter of right is a final order for appeal purposes. *City of Houston v. American Traffic Solutions, Inc.*, 668 F.3d 291, 293 (5th Cir. 2012).

**ISSUE PRESENTED**

Did the district court err in denying True the Vote's motion to intervene as a matter of right where True the Vote has satisfied all of the requirements of Rule 24(a)?

**STATEMENT OF THE CASE**

This appeal arises from the denial of True the Vote's right to intervene in this consolidated case brought under the section 2 of the Voting Rights Act and the Fourteenth and Fifteenth Amendments.

The underlying case represents the United States' challenge under section 2 of the Voting Rights Act to Texas' Voter ID law, SB 14, and its request for a prophylactic remedy—an order that Texas remain bound as a "covered jurisdiction" under Section 3 of the Voting Rights Act in the face of the United States Supreme Court's holding in *Shelby County v. Holder*, 133 S. Ct. 2612 (2013). (ROA.6055) (ROA.41).

True the Vote sought to intervene to defend and uphold SB 14 and because its interests will be inadequately represented by the more extensive interests of the State of Texas. (ROA.462). True the Vote has a substantial interest in SB 14 and in the outcome of this litigation due to its role in successfully working for the creation and enactment of SB

14. (ROA.464) (RE.8, 9, 11, 12, 13). True the Vote's interest is also demonstrated by its activities in monitoring elections and identifying in-person voter fraud in Texas to protect the integrity of the election process. (ROA.464-466) (RE.8, 9, 12, 13).

True the Vote demonstrated that it met all of the requirements to intervene as a matter of right under Rule 24(a). (ROA.462). However, on December 11, 2013, the district court denied True the Vote's motion to intervene. (ROA.1357).

### A.   Texas' Voter ID Law–SB 14.

At least twenty-two states have passed or proposed legislation requiring voters to show a form of photo identification in order to vote. Texas is among those states. Texas enacted its Voter ID Law in 2011. TEX. ELEC. CODE § 63.0101.[1] SB 14 has been in effect for the November 2013 election and the 2014 primary elections.[2]

SB 14 requires voters identify themselves at polling places using one of five forms of government-issued photo identification: (1) a driver's license or personal ID card issued by the Texas Department of Public

---

[1] Section 63.0101 of the Texas Election Code is referred to herein as SB 14 or Texas' Voter ID law to comport with the parties' filings below.

[2] The United States' assertion in its original petition that "SB 14 has not been in effect in any election in Texas" is incorrect. (ROA.6062).

3

Safety (DPS) that has not expired or that expired no earlier than 60 days before the date of presentation; (2) a license to carry a concealed handgun, also issued by DPS; (3) a U.S. military ID card; (4) a U.S. citizenship certificate with photograph; or (5) a U.S. passport. TEX. ELEC. CODE § 63.0101. Voters lacking any of these photo IDs may secure a photographic "election identification certificate," which is available to prospective voters without a fee from any Texas DPS office. TEX. TRANSP. CODE § 521A.001(e).

Certain voters are exempt from SB 14. Disabled voters may instead present a voter registration certificate and voters meeting the requirements of section 63.011 of the Texas Election Code may cast a provisional ballot in the absence of a photo ID. TEX. ELEC. CODE §§ 63.001(g),(h), 63.011, 65.054, 65.0541. Additionally, qualified voters may vote early by mail if they are over sixty-five, disabled, confined in jail or expect to be absent on election day. *See* TEX. ELEC. CODE § 82.001-82.004.

4

## B.    The underlying litigation.

When SB 14 was enacted, Texas was a covered jurisdiction under the Voting Rights Act.[3] *Perry v. Perez*, 132 S. Ct. 934, 939-40 (2012).  In accordance with the preclearance requirements of the Act, Texas sought a declaratory judgment from the United States District Court for the District of Columbia that SB 14 neither had the purpose nor effect of denying or abridging the right to vote on account of race, color or membership in a language minority group. *Texas v. Holder*, 888 F. Supp. 2d 113 (D.C.D.C. 2012).[4]  Texas' request was denied. *Id.* at 144-145.

Texas appealed to the United States Supreme Court. *Texas v. Holder*, 133 S. Ct. 2886 (2013).  While Texas' appeal was pending, the

---

[3]  Texas became a covered jurisdiction in 1975 when Congress expanded Section 4(b) to include jurisdictions with substantial non-English-speaking populations but English-only voting materials. *Shelby County,* 133 S. Ct. at 2620.

[4]  Under Rule of Evidence 201(b), True the Vote requests that the Court take judicial notice of the district court record in the related preclearance phase of this litigation—*Texas v. Holder*, 888 F. Supp. 2d 113 (D.C.D.C. 2012).  True the Vote's record excerpts 7-13 are from that related case.  This Court recently took judicial notice of a district court record from a related case in *Stephanie Odle v. Wal-Mart Stores, Inc.*, No. 13-10037, __ F.3d __, 2014 WL 1282753 at *1 n.1 (5th Cir. 2014) and stated in footnote 1: "We may do so because the 'fact that a judicial action was taken is indisputable and is therefore amenable to judicial notice.' *Sepulvado v. Jindal,* 739 F.3d 716, 719 n.3 (5th Cir. 2013) (per curiam) (citing *Gray ex rel. Rudd v. Beverly Enters.-Miss. Inc.*, 390 F.3d 400, 408 n.7 (5th Cir. 2004); Charles A. Wright & Arthur R. Miller, 21B FED. PRAC. & PROC. § 51.06.4 (2d ed. & Supp. 2012); FED. R. EVID. 201(b)."  That same reasoning and authority apply here.

5

Supreme Court decided *Shelby County v. Holder* which effectively did away with the requirement of preclearance. 133 S. Ct. 2612 (2013) (holding section 4(b) of the Voting Rights Act, which subjected Texas to preclearance, was unconstitutional). The Supreme Court then disposed of Texas' appeal by vacating the district court's judgment and remanding the case for further proceedings in light of *Shelby County. Texas*, 133 S. Ct. at 2886.

That resulted in the case being dismissed and the current suit being filed by the United States under section 2 of the Voting Rights Act to enjoin enforcement of SB 14.[5] (ROA.6055). This suit has been consolidated with three others brought by public interest groups and individuals as plaintiffs and intervenor-plaintiffs who also seek to enjoin SB 14. They have additionally asserted claims under the Fourteenth and Fifteenth Amendments. (ROA.6055) (ROA 41).

### C. True the Vote successfully campaigned for the creation and passage of SB 14.

True the Vote immediately moved to intervene as a defendant to defend and uphold SB 14. (ROA.462). True the Vote is a non-profit

---

[5] The United States also seeks extraordinary relief under section 3 of the Voting Rights Act, asking the district court to appoint federal observers pursuant to section 3(a) and to retain jurisdiction in order to subject Texas to preclearance under section 3(c) of the Act. (ROA.6055).

organization based in Houston that works to protect the integrity of local, state, and federal elections.[6] (ROA.639-641) (ROA.464-65). True the Vote monitors elections for compliance with state and federal law and identifies instances of voting irregularities or possible fraud, including voter impersonation or the failure of election officials to verify the identity of voters. (ROA.464-65.) True the Vote also examines official lists of eligible voters and other voter registration data to verify their accuracy and protect the integrity of the voting process. (ROA.464-65.) Based on these efforts, True the Vote has identified significant numbers of ineligible voters, including noncitizens, who have been registered to vote in Texas. (ROA.466). True the Vote has also demonstrated that vast numbers of improper voter registrations remain on the rolls across Texas, including voters who have died. (ROA.466).

Furthermore, True the Vote has actively and successfully campaigned for a Voter ID law in Texas. As part of its efforts, True the Vote made a proposal to the Texas Legislature in 2011 for a Voter ID law. (RE.12). True the Vote's proposal included *seven* types of photo ID:

---

[6] "The electoral system cannot inspire public confidence if no safeguards exist to deter or detect fraud or to confirm the identity of voters. Photo identification cards currently are needed to board a plane, enter federal buildings, and cash a check. Voting is equally important." *Crawford v. Marion County. Election Bd.*, 553 U.S. 181, 194, 128 S. Ct. 1610, 1618 (2008).

(1) a Texas driver's license, even if expired, (2) any ID card issued by the state of Texas or federal government, (3) any valid employee ID card containing a photograph from any branch, department, agency or entity of the U.S. Government, Texas or any county, municipality, board, authority or other entity of the State, and (4) a valid tribal photo ID. (RE.12). These types of photo ID are more permissive in nature than the *six* types that were actually included in SB 14. *Compare Texas* v. *Holder*, 888 F.Supp.2d at 115.

But, SB 14 embodies the successful culmination of True the Vote's efforts for a Voter ID law in Texas. True the Vote's members testified in support of SB 14 during legislative hearings and they provided evidence of suspected voter fraud in Texas that helped support the passage of SB 14. (RE.8, 9) (ROA.464).

### D.    True the Vote's support for SB 14 is already part of this litigation.

True the Vote's campaign to enact a Voter ID law in Texas and in support of SB 14 have been woven into the fabric of this litigation by the United States. When Texas sought to preclear SB 14 in the United States District Court for the District of Columbia, the United States used True the Vote's efforts as part of its case to try to show SB 14 had

"discriminatory purpose or intent" by association to True the Vote. (RE.11, 13) (ROA.470-471) (ROA.5838-5840).

The United States identified testimony regarding True the Vote's activities in the parties' joint appendix to their proposed findings of fact and conclusions of law.[7] (RE.8-10).  The United States also questioned Texas legislators regarding their communications with True the Vote's founder (ROA.656-67) (ROA.669-678) and identified as trial exhibits True the Vote's proposal to the Texas Legislature for a Voter ID law, as well as an e-mail from True the Vote's founder regarding her testimony in support of SB 14. (RE.12, 13).

As True the Vote explained to the district court below, the United States' strategy of pointing to True the Vote's support of HB 14 to try to show that it was enacted with a discriminatory purpose is sure to continue in this suit. (ROA.5838-40) (ROA.470-71).

### E.    True the Vote is denied the right to intervene.

The United States is the only party who opposed True the Vote's intervention. (ROA.615-709).  Despite previously using True the Vote's

---

[7] That testimony concerned legislators' questions to the founder of True the Vote regarding True the Vote's documented instances of suspected voter fraud and testimony of a Vietnam veteran disclosing three instances of voter fraud during his work as a True the Vote poll-watcher. (RE.8, 9).

9

activities as part of its case to oppose preclearance of SB 14, the United States now contends that True the Vote has no particularized interest in SB 14. (ROA.618-20).

In reversing its course, the United States relied on an order denying intervention to True the Vote in a different case, from a different state, involving different federal laws and a different set of circumstances. *United States v. Florida*, No 4:12-cv-285, Slip Op. at 3-4 (N.D. Fla. Nov. 6, 2012). (ROA.630). The district court then used that order as its only stated basis for denying True the Vote's motion to intervene. (ROA.1357-58) (RE.5).

True the Vote now appeals the denial of its right to intervene to this Court.

## SUMMARY OF THE ARGUMENT

Intervention is tested by the facts and circumstances of each case. Here, the district court did not undertake a practical analysis of the facts and circumstances underlying True the Vote's requested intervention. This is a unique case in which intervention under Rule 24(a) is warranted:

- True the Vote successfully supported the creation and passage of SB 14 to the Texas Legislature to prevent voter fraud and vote dilution;

- True the Vote has documented suspected instances of in-person voter fraud;

- True the Vote's activities evidence an objective need for Voter ID legislation to deter and detect in-person voter fraud and prevent vote dilution;

- The State of Texas cannot adequately represent True the Vote's interests because their interests do not align precisely and Texas has more extensive interests to balance than does True the Vote; and

- True the Vote's intervention may provide grounds for crafting a section 2 remedy in this case should the district court conclude SB 14 is infirm.

Because True the Vote has satisfied the requirements of Rule 24(a), True the Vote asks the Court to reverse the district court's order denying True the Vote's intervention as a matter of right.

## ARGUMENT

## I.    True the Vote is entitled to intervene as a matter of right.

The district court erred in denying True the Vote's motion for intervention because True the Vote meets the requirements for intervention as a matter of right.  FED. R. CIV. P. 24(a).

Under Rule 24(a), a court "must permit anyone to intervene" who satisfies the following requirements:

11

> (1) the application must be timely; (2) the applicant must have an interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest; and (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*Brumfield v. Dodd*, __ F.3d __, 2014 WL 1395663 at *2 (5th Cir. 2014) (quoting *Sierra Club v. Espy*, 18 F.3d 1202, 1204-05 (5th Cir. 1994).

In this case, timeliness is not at issue.[8] The denial of True the Vote's right to intervene under the other three prongs is reviewed *de novo. Sierra Club,* 18 F.3d at 1202, 1205 & n. 2. In that regard, this Court has explained "[a]lthough the movant bears the burden of establishing its right to intervene, Rule 24 is to be liberally construed." *Brumfield*, 2014 WL 1395663 at *2. "The inquiry [under Rule 24(a)] 'is a flexible one, and a practical analysis of the facts and circumstances of each case is appropriate.'" *Id; see also United States v. Texas Eastern Transmission Corp.*, 923 F.2d 410, 413 (5th Cir. 1991) ("intervention of right must be measured by a practical rather than technical yardstick").

---

[8] There is no dispute that True the Vote timely moved to intervene. (ROA.615-618). This lawsuit was filed August 22, 2013. (ROA.6055). True the Vote moved to intervene approximately one month later on September 25, 2013 (ROA.462).

12

### A.    The district court failed to conduct a practical analysis of the facts and circumstances surrounding this case.

The district court did not conduct a practical analysis of the facts and circumstances underlying this case and True the Vote's request to intervene. (RE.5).    Instead, the district court simply adopted the reasoning and conclusion in the *Florida* order to deny True the Vote's right to intervene here. *See United States v. Florida*, No 4:12-cv-285, Slip Op. at 3-4 (N.D. Fla. Nov. 6, 2012); (RE.5, 6).    In addition to being legally incorrect, the district court's reliance on the *Florida* order is seriously misplaced.    The *Florida* order denied intervention to True the Vote in a different case, from a different state, involving different laws, and a different set of circumstances.

In *Florida*, the State of Florida embarked on a program to remove noncitizens from voter registration rolls.    The United States brought suit under section 8 of the National Voter Registration Act to enjoin Florida from implementing the program until after the 2012 general election.    True the Vote moved to intervene to defend the program, which the United States opposed.[9] (RE.6.)

---

[9]    Four individuals and another public interest organization, Judicial Watch, Inc., also moved to intervene on the same grounds. (RE.6.)

13

Florida voluntarily abandoned the program and the United States' request for injunctive relief was denied. (RE.6.)  At the parties' request, the district court stayed the proceeding until after the general election. The stay did not apply to the motions to intervene, which the district court then denied. (RE.6.)  In denying intervention, the district court in *Florida* concluded that the primary stated interest for intervening, avoiding vote dilution for properly registered voters, was too generalized to support intervention as of right. (RE.6.)  The court also concluded that True the Vote's further interest of monitoring Florida's list-maintenance activities was not sufficient because it would not be threatened by the United States or Florida. (RE.6.)

Significantly, the district court in *Florida* limited and distinguished its ruling from the situation where a movant "not only ha[s] a unique perspective but also participated in the event that led to the litigation." (RE.6.)  The *Florida* court went on to state that "True the Vote has not alleged that it was involved in the State's creation of its voter-list monitoring program." (RE.6.)  The opposite is true here.

It is undisputed that True the Vote was actively involved in the creation and enactment of SB 14.  The United States even referred to

True the Vote's activities in supporting SB 14 when it opposed preclearance of SB 14. (RE.7-13). As a result, the only common thread tying the *Florida* order to this case is that True the Vote asked to intervene. The *Florida* order is distinguishable on its face and the district court erred in relying on it as a substitute for conducting a practical analysis of the facts and circumstances underlying *this litigation*. If the district court had done that analysis for the three prongs in Rule 24(a) that are at issue, it would have granted True the Vote's motion to intervene as a matter of right—just like it granted intervention for all the other movants who requested to intervene.[10]

## B.  True the Vote has a particularized interest in SB 14 and protecting the integrity of elections in Texas that easily supports intervention in this public interest case.

To intervene as of right a movant's interest must be "direct, substantial, and legally protectable." *Brumfield*, 2014 WL 1395663 at *3. This Court has previously found interests that are similar to True the Vote's in this case to be sufficient. In *City of Houston v. American Traffic Solutions*, this Court concluded that citizens of the City of

---

[10]  The district court has permitted all of the following other movants to intervene as plaintiffs: the Texas League of Young Voters Education Fund; Imani Clark; Texas Association of Hispanic County Judges and County Commissioners; Aurica Washington; Crystal Owens; Michelle Bessiake; and Maria Longoria Benavides. These intervenor-plaintiffs are now included in the style of this appeal.

Houston had established an interest in a declaratory judgment suit interpreting a contract between the City of Houston and its traffic light camera contractor. 668 F.3d 291 (5th Cir. 2012). The City of Houston entered into a contract with American Traffic Solutions (ATS) after passing an ordinance approving the use of red light cameras. *Id.* at 292-93.

Both the city and ATS made millions of dollars from the fines collected on the electronically-generated traffic tickets. The citizens campaigned to force the city to stop using the system. *Id.* Their efforts resulted in the passage of a city charter amendment that repudiated the use of the cameras. *Id.*

The city then terminated ATS's contract and sued in federal court seeking a declaration of rights between ATS and the city over the contract's status. *Id.* ATS counterclaimed, alleging that the charter amendment election and subsequent ordinances were invalid, ultra vires, and unconstitutional. *Id.* After learning of the suit in a local paper, the citizens moved to intervene. *Id.* at 293. They alleged the city would not present the strongest defense of the charter amendment because it opposed their position from the outset, attempted to reinstate

16

the red-light cameras before the litigation had concluded, and stood to lose revenue if the authorization for traffic cameras were reinstated. *Id.* The district court denied intervention. This Court reversed and held:

> [The citizen intervenors] have demonstrated a particular interest in cementing their electoral victory and defending the charter amendment itself. If the amendment is overturned, their money and time will have been spent in vain. Finally, they have raised substantial doubts about the City's motives and conduct in its defense of the litigation with ATS. Without these intervenors' participation, the City might well be inclined to settle the litigation on terms that preserve the adverse ruling on the charter amendment and thus preserve its flexibility to reinstate red light cameras in the future.

*Id.* at 294.[11]

Like the citizens in *American Traffic Solutions*, True the Vote successfully advocated for Voter ID and SB 14 to the Texas Legislature.

---

[11] Other courts have also permitted intervention under similar circumstances. *See, e.g.*, *Washington State Bldg. & Const. Trades Council, AFL-CIO v. Spellman*, 684 F.2d 627, 630 (9th Cir. 1982) ("A public interest group is entitled as a matter of right to intervene in an action challenging the legality of a measure it has supported."); *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 527 (9th Cir. 1983); *Coalition of Arizona/New Mexico Counties v. Dep't of Interior*, 100 F.3d 837, 841 (10th Cir. 1996) (photographer has direct, substantial and legally protectable interest in protecting owl species when he was instrumental in securing protection for owl under endangered species act); *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246 (10th Cir. 2001); *New Mexico Off-Highway Vehicle Alliance v. U.S. Forest Serv.*, 540 F. App'x 877, 880 (10th Cir. 2013) (we . . . can easily determine the first two elements of the rule are met. . . [the environmental groups] participated in the administrative process by submitting comments and by appealing the Plan . . . also, the environmental groups' staff, members, and volunteers routinely enjoy the forest for recreational and aesthetic reasons.").

True the Vote also expended its resources to recommend legislation narrowly tailored to preserving electoral integrity by deterring and detecting in-person voter fraud. (RE.8, 9, 12, 13).   True the Vote's members testified in favor of SB 14, explaining that documented instances of in-person voter fraud evidence need for Voter ID in Texas. (RE.9).  Direct testimony from True the Vote's founder and a True the Vote worker demonstrated suspected voter fraud in Texas. (RE.8, 9).

Like the movants in *American Traffic Solutions,* True the Vote has an important interest in SB 14 that supports intervention as a matter of right because of its successful support for the creation and enactment of SB 14.  That is particularly true for a public interest case like this.

In *Brumfield,* this Court recently explained that in cases involving a public interest question or which are brought by a public interest group, the interest prong of Rule 24(a) is applied more leniently.

> The public interest easily supports intervention: 'The interest requirement may be judged by a more lenient standard if the case involves a public interest question or is brought by a public interest group.  The zone of interests protected by a constitutional provision or statute of general application is arguably broader than are the protectable interests recognized in other contexts.'  Our en banc court has explained that a zone-of-interest analysis in standing doctrine can bear on the interest question for purposes of intervention.

18

*Id.* at *4 (citations omitted) (holding movant parents who opposed an effort by the federal government to enjoin a school voucher program under the Equal Protection Clause met the interest requirement to intervene as of right because they were within the zone of interest protected by the Equal Protection Clause and covered by the statute in question and would raise a matter of public interest.).

This case easily fits both categories. First, it is being brought by the federal government along with several public interest groups (the League of United Latin American Citizens, Texas League of Young Voters Education Fund, and Texas Association of Hispanic County Judges and County Commissions) who have the purported aim of enforcing the Equal Protection and Due Process Clauses of the Fourteenth Amendment, the Fifteenth Amendment, and section two of the Voting Rights Act to ostensibly protect the right to vote. (ROA.6055) (ROA.41).

True the Vote and its members have a similar public interest mission, to preserve the integrity of the right to vote. (ROA.464-471). True the Vote has a basic interest in SB 14 because it furthers True the Vote's mission and impacts how True the Vote conducts monitoring

19

activities.  This interest is peculiar to True the Vote—an organization that trains and places volunteers on the ground on election day to detect voter fraud. (ROA.462-471).

Moreover, if any group can be described as being within the zone of interest protected by SB 14 and by these constitutional guarantees and the Voting Rights Act, it is True the Vote and its members who have joined together for the express purpose of deterring and detecting voter fraud— an interest in protecting the integrity of elections in Texas against vote dilution by ineligible voters. (RE.8, 12, 13).  This is highlighted by the fact that the United States has woven True the Vote into the fabric of this litigation.

In opposing preclearance, the United States attempted to use True the Vote (and its relationship to King Street Patriots) to create an inference that SB 14 was enacted with a discriminatory purpose.[12] (RE.10).  The United States suggested that communications between sponsors and key supporters of Voter ID like True the Vote are probative of whether SB 14 was motivated by discriminatory intent.  As part of that effort, the United States identified several exhibits

---

[12]  True the Vote and King Street Patriots have the same founder. (RE.8).

concerning True the Vote; including True the Vote's proposal for a Voter ID law to the Texas Legislature. (RE.11, 12, 13).

As a result, True the Vote also has a particular interest in rebutting the United States' effort to use True the Vote's support for SB 14 as somehow reflecting a discriminatory purpose for enacting the statute. *Sierra Club v. Glickman*, 82 F.3d 106, 109 (5th Cir. 1996) (farmers subject of Sierra Club's suit against Department of Agriculture permitted to intervene because farmers were the subject of the suit and real parties in interest with respect to it).

True the Vote's interest in this public interest case is therefore substantial and, under *Brumfield,* is more than sufficient to satisfy the second prong of Rule 24(a) to intervene as a matter of right.

**C.    True the Vote's interest in SB 14 and in protecting the integrity of elections in Texas would be seriously impaired by an adverse decision in this case.**

In *Brumfield*, this Court recognized the following standard for the third prong under Rule 24(a):

> 'Once a movant has successfully established a sufficient interest in the subject matter of the action, the movant must demonstrate the disposition of that action may, as a practical matter, impair or impede the movant's ability to protect that interest.'

*Brumfield*, 2014 WL 1395663 at *5 (citations omitted).

The Court also stated that "the impairment requirement does not demand that the movant be bound by a possible future judgment, and the current requirement is a great liberalization of the prior rule. The impairment must be 'practical,' however, and not merely 'theoretical.'" *Id.*

In applying this standard, *Brumfield* held that movant parents who opposed the federal government's effort to enjoin a school voucher program met the impairment prong because they only had to demonstrate "that the disposition of the action 'may' impair or impede their ability to protect their interests"—"the parents [did] not need to establish that their interests *will* be impaired." *Id.* at *5. This is because "[t]he very purpose of intervention is to allow interested parties to air their views so that a court may consider them before making potentially adverse decisions." *Id.*

In this case, if Texas is enjoined from enforcing the Voter ID provisions of SB 14, True the Vote will be at risk of losing its ability to accurately catalogue and report instances of voter fraud. (ROA.465-469). Like the plaintiff-intervenors who contend SB 14 impairs their ability to cast a vote, an order enjoining or striking down SB 14 may likewise

22

impair how True the Vote carries out its mission to preserve election integrity by performing election-monitoring activities, including verifying the identity of voters. (ROA.464-469).

Moreover, the *stare decisis* effect of a judgment in federal government's favor could be relied upon as precedent in subsequent suits against True the Vote to enjoin its election-monitoring activities and its cataloging and reporting of voter fraud.  This would, as a practical matter, impair or impede True the Vote's public interest mission of preserving election integrity *See Sierra Club v. Glickman*, 82 F.3d 106, 110 (5th Cir. 1996).  True the Vote satisfied the third prong in Rule 24(a) to intervene as a matter of right.

### D.    True the Vote's interests are not adequately represented by the State of Texas.

The final requirement for intervention as a matter of right under Rule 24(a) is that the movant must be inadequately represented by the existing parties to the suit.   The movant has the burden of demonstrating inadequate representation, "but this burden is minimal." *Sierra Club*, 18 F.3d at 1207.  In *Brumfield* the Court recognized that "[t]he movant need not show that the representation by existing parties

23

will be, for certain, inadequate… [T]he [movant's] burden on this matter should be viewed as 'minimal.'" *Brumfield*, 2014 WL 1395663 at *6.

The law recognizes two presumptions of adequate representation, but neither applies here. The first arises when one party is a representative of the absentee by law. *Id.* There is no suggestion in this case that the State of Texas is the legal representative of True the Vote.

The second presumption "arises when the would-be intervenor has the same ultimate objective as a party to the lawsuit," in which event "the applicant for intervention must show adversity of interest, collusion, or nonfeasance on the part of the existing party to overcome the presumption." *Id.* (citations omitted).

In *Sierra Club*, and more recently in *Brumfield*, this Court recognized that this presumption is overcome when a private group seeks to intervene on the same side as the government because the government must represent the broad public interest and that broad interest generally may not align precisely with the more particular interest of the movant-group. *Sierra Club*, 18 F.3d at 1204; *Brumfield*, 2014 WL 1395663 at *6. The Court's reasoning from *Brumfield* is instructive:

> Although a private group does not always satisfy this prong just because a governmental entity is on the same side of an issue, in this case the parents have easily met their minimal burden. The state has many interests in this case—maintaining not only the Scholarship Program but also its relationship with the federal government and with the courts that have continuing desegregation jurisdiction. The parents do not have the latter two concerns; their only concern is keeping their vouchers. We cannot say for sure that the state's more extensive interests will *in fact* result in inadequate representation, but surely they might, which is all that the rule requires.

*Brumfield*, 2014 WL 1395663 at *6.

The same is true here. The State of Texas has many interests in this case that include not only maintaining SB 14, but also its relationship with the federal government and the courts that have continuing jurisdiction over voting rights matters. For example, in the preclearance phase of this litigation, Texas offered no evidence of the voter rolls containing vast numbers of ineligible, dead, and duplicate voters to support SB 14. (ROA.471). True the Vote can make that showing. Inadequately maintained voter rolls are a key purpose for the enactment of SB 14. But Texas has a disincentive to offer such evidence because if it did that would arguably be an admission that Texas, or counties within Texas, are not complying with section 8 of the National

Voter Registration Act. (ROA.472). True the Vote does not have that concern. Its only concern is upholding Texas' Voter ID law.

Because Texas' more extensive interests might result in inadequate representation, that alone is sufficient to satisfy the inadequate representation prong. *See Brumfield*, 2014 WL 1395663 at *6.

Moreover, like *Brumfield*, True the Vote has also staked out positions that are different from those of the State of Texas. For example, the federal government has already woven True the Vote into the fabric of this litigation. (RE.7-13). True the Vote intends to confront the federal government's position, first made in the preclearance case, that portrays True the Vote's support for SB 14 as being racially motivated and then attacks SB 14 by association to True the Vote as being racially discriminatory. (ROA. 5846). Only True the Vote can adequately address and rebut that position.

Additionally, True the Vote will show that more permissible types of Voter ID with more options of Voter ID, like those included in True the Vote's proposal to the Texas Legislature in 2011, can be included in

a Voter ID bill without sacrificing the important role that Voter ID plays in deterring and detecting voter fraud. (RE.12).

This is important because if the district court should agree with the United States position that SB 14 is somehow infirm, True the Vote's evidence will allow the district court to exercise its remedial authority to give the Texas Legislature the opportunity to cure any such infirmity and to outline for the legislature any necessary changes rather than immediately strike-down or enjoin SB 14. *See Mississippi State Chapter Operation Push, Inc. v. Mabus*, 932 F.2d 400, 401-402, 405-406 (5th Cir. 1991) (holding the district court had remedial authority in a section 2 Voting Rights Act case to give the state legislature an opportunity to cure infirmities in its voter registration procedures and to outline for the legislature the changes necessary).

Accordingly, this Court's conclusion in *Brumfield* regarding the adequate representation prong applies with equal force here:

> First, it is not evident that the ultimate-objective presumption of adequate representation even applies because the state has more extensive interests to balance than do the [movants]. The lack of unity in all objectives combined with real and legitimate additional or contrary arguments is sufficient to demonstrate that the representation *may* be inadequate, so this requirement of Rule 24(a) is met.

27

*Brumfield*, 2014 WL 1395663 at *7.

Because True the Vote has met all the requirements in Rule 24(a) for intervention as a matter of right, the district court's order denying True the Vote's motion to intervene should be reversed. True the Vote is entitled to intervene in this case as a defendant to defend and uphold SB 14 and Voter ID law in Texas.

## CONCLUSION AND PRAYER FOR RELIEF

Movant-Appellant, True the Vote, respectfully requests this Court to reverse the district court's denial of True the Vote's motion to intervene as a matter or right and to remand for further proceedings consistent with this Court's orders.

**This case is set for trial on September 2, 2014 and the district court has indicated that it will not continue this trial setting. (ROA 1024).**

As a result, True the Vote asks this Court to decide this appeal on an expedited basis.[13] Alternatively, True the Vote would ask the Court to stay the underlying case during the pendency of this appeal to

---

[13] With the exception of the *Veasey* plaintiffs and the *Hispanic County Judges* plaintiffs, all of the other plaintiffs, and all of the defendants, requested a trial setting in 2015. (ROA.712-73) (ROA.929-46) (ROA.1017-23) (ROA.1024-26) (ROA.5906-11) (ROA.5917-5927).

preserve the Court's appellate jurisdiction over the appeal and to prevent it from becoming moot. FED. R. APP. P 8(a)(2). True the Vote additionally request for all further relief to which it may be justly entitled.

Respectfully submitted,

/s/    *Joseph M. Nixon*

Joseph M. Nixon
Texas State Bar No. 15244800
jnixon@bmpllp.com
N. Terry Adams, Jr.
Texas State Bar No. 00874010
tadams@bmpllp.com
Kelly H. Leonard
Texas State Bar No. 24078703
kleonard@bmpllp.com
BEIRNE, MAYNARD & PARSONS, LLP
1300 Post Oak Blvd, Suite 2500
Houston, Texas  77056
(713) 623-0887  Tel.
(713) 960-1527  Fax

James E. "Trey" Trainor, III.
Texas State Bar No. 24042052
ttrainor@bmpllp.com
BEIRNE, MAYNARD & PARSONS, LLP
401 W. 15th Street, Suite 845
Austin, TX 78701
(512) 623-6700  Tel.
(512) 623-6701  Fax

**Counsel for Movant-Appellant
True the Vote**

# CERTIFICATE OF SERVICE

By filing electronically, I certify that service was accomplished through the Notice of Electronic Filing for parties and counsel who are Filing Users and that service was accomplished on any party who is not a Filing User in accordance with the Federal Rules and the Local Rules on April 30, 2014.

*/s/ N. Terry Adams, Jr.*
N. Terry Adams, Jr.

Anna Baldwin
John Albert Smith III
U.S. Department of Justice
NWB 7273
950 Pennsylvania Avenue NW
Washington, DC 20530
F: 202-514-8490
Anna.baldwin@usdoj.gov

Erin Flynn
U.S. Department of Justice
RFK Room 3742
950 Pennsylvania Avenue NW
Washington, DC 20530
F: 202-514-8490
Erin.flynn@usdoj.gov

Diana Flynn
U.S. Department of Justice
PO Box 14403
Ben Franklin Station
Washington, DC 20044
F: 202-514-8490
Diana.k.flynn@usdoj.gov

Christina A. Swarns
NAACP Legal Defense Fund
40 Rector Street, 5th Floor
New York, NY 10006
F: 212-229-7592
cswarns@naacpldf.org

Chad W. Dunn
Brazil & Dunn
4201 Cypress Creek
Suite 530
Houston, TX 77068
F: 281-580-6310
chad@brazilanddunn.com

Gerard J. Sinzdak
Wilmer, Cutler, Pickering, Hale & Dorr LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Gerard.sinzdak@wilmerhalte.com

John Albert Smith, III
U.S. Attorney's Office
800 N. Shoreline Boulevard
Suite 500
Corpus Christi, Texas 78401
F: 361-888-3200
John.a.smith@usdoj.gov

Rolando Leo Rios, I,
115 E. Travis Street
Suite 1645
San Antonio, Texas 78295
F: 210-222-2898
rrios@rolandorioslaw.com

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

1.   This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because:

- this brief contains 6,053 words, excluding the parts of the brief exempted by FED R. APP. P. 32(a)(7)(B)(iii).

2.   This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because:

- this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point New Century Schoolbook font.

/s/  N. Terry Adams, Jr.
N. Terry Adams, Jr.

*Counsel for Movant-Appellant*

Dated:  April 30, 2014

31