No. 14-40003

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
_____

MARC VEASEY; JANE HAMILTON; SERGIO DELEON; FLOYD CARRIER;
ANNA BURNS; MICHAEL MONTEZ; PENNY POPE; OSCAR ORTIZ; KOBY
OZIAS; LEAGUE OF UNITED LATIN AMERICAN CITIZENS; JOHN
MELLOR-CRUMLEY; DALLAS COUNTY, TEXAS,

Plaintiffs-Appellees

v.

RICK PERRY, in his Official Capacity as Governor of Texas; *et al.*,

Defendants

(*See inside cover for continuation of caption*)
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
_____

BRIEF FOR THE UNITED STATES AS APPELLEE
_____

JOCELYN SAMUELS
 Acting Assistant Attorney General

DIANA K. FLYNN
ERIN H. FLYNN
 Attorneys
 Department of Justice
 Civil Rights Division
 Appellate Section
 Ben Franklin Station
 P.O. Box 14403
 Washington, DC 20044-4403
 (202) 514-5361

(*Continuation of caption*)

UNITED STATES OF AMERICA,

Plaintiff-Appellee

TEXAS LEAGUE OF YOUNG VOTERS EDUCATION FUND; IMANI CLARK; TEXAS ASSOCIATION OF HISPANIC COUNTY JUDGES AND COUNTY COMMISSIONERS; AURICA WASHINGTON; CRYSTAL OWENS; MICHELLE BESSIAKE; MARIA LONGORIA BENAVIDES,

Intervenor Plaintiffs-Appellees

v.

STATE OF TEXAS; *et al.*,

Defendants

TRUE THE VOTE,

Movant-Appellant

## STATEMENT REGARDING ORAL ARGUMENT

The facts and legal arguments are adequately presented in the parties' briefs, the underlying filings on appellant's motion in the district court, and the electronic record on appeal. Accordingly, the United States does not believe that oral argument is necessary in this case. Rather, given the expedited trial schedule in the district court, the best approach would be for this Court to resolve this case without oral argument.[1]

---

[1] Appellant has moved to have this Court expedite this appeal, or, in the alternative, to stay the proceedings in the district court pending appeal. On May 15, 2014, the United States filed a response opposing appellant's motion. As the United States explained in its response, the trial in this case is scheduled for September 2, 2014.

# TABLE OF CONTENTS

**PAGE**

STATEMENT REGARDING ORAL ARGUMENT

JURISDICTIONAL STATEMENT ..................................................................2

STATEMENT OF THE ISSUE.....................................................................3

STATEMENT OF THE CASE.......................................................................3

SUMMARY OF ARGUMENT ....................................................................13

ARGUMENT

    THE DISTRICT COURT CORRECTLY DENIED TRUE THE
    VOTE'S MOTION TO INTERVENE AS OF RIGHT................................14

        A.    *Standard Of Review* .................................................14

        B.    *The District Court Correctly Concluded That True
            The Vote Did Not Satisfy The Criteria For Intervention
            As Of Right* ..............................................................14

            1.    *True The Vote Cannot Establish Any Interest In
                The Litigation That Is Legally Protectable And
                Would Be Impaired Absent Intervention* .......................15

            2.    *The State Defendants Adequately Represent
                True The Vote's Concerns* ............................................26

CONCLUSION ....................................................................................36

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**CASES:**                                                                                    **PAGE**

*Brumfield* v. *Dodd*, No. 13-31262, 2014 WL 1395663
    (5th Cir. Apr. 10, 2014) ..............................................................20, 24, 27, 33

*City of Emeryville* v. *Robinson*, 621 F.3d 1251 (9th Cir. 2010) ..............................18

*City of Hous.* v. *American Traffic Solutions, Inc.*,
    668 F.3d 291 (5th Cir. 2012) ..................................................................*passim*

*Conley* v. *Board of Trs.*, 707 F.2d 175 (5th Cir. 1983) ..........................................19

*Cotter* v. *Massachusetts Ass'n of Minority Law Enforcement Officers*,
    219 F.3d 31 (1st Cir. 2000), cert. denied, 531 U.S. 1072 (2001)..................28

*Edwards* v. *City of Hous.*, 78 F.3d 983 (5th Cir. 1996) (en banc)...................*passim*

*Hollingsworth* v. *Perry*, 133 S. Ct. 2652 (2013) ............................................... 19-20

*Hopwood* v. *Texas*, 21 F.3d 603 (5th Cir. 1994) ........................................ 27, 30-31

*Industrial Commc'ns & Elecs., Inc.* v. *Town of Alton*,
    646 F.3d 76 (1st Cir. 2011).......................................................................18

*John Doe No. 1* v. *Glickman*, 256 F.3d 371 (5th Cir. 2001)....................................15

*Kneeland* v. *National Collegiate Athletic Ass'n*,
    806 F.2d 1285 (5th Cir.), cert. denied, 484 U.S. 817 (1987) ........... 28-29, 31

*New Orleans Pub. Serv., Inc.* v. *United Gas Pipe Line Co.*,
    732 F.2d 452 (5th Cir.) (en banc),
    cert. denied, 469 U.S. 1019 (1984)....................................................... 15-16

*Noatex Corp.* v. *King Constr. of Hous., L.L.C.*,
    732 F.3d 479 (5th Cir. 2013) .......................................................................19

*Ross* v. *Marshall*, 426 F.3d 745 (5th Cir. 2005),
    cert. denied, 549 U.S. 1166 (2007).................................................... 15-16, 18

**CASES (continued):**                                                     **PAGE**

*Sierra Club* v. *Espy*, 18 F.3d 1202 (5th Cir. 1994)............................................16, 34

*Texas* v. *Holder*, 888 F. Supp. 2d 113 (D.D.C. 2012),
      vacated and remanded, 133 S. Ct. 2886 (2013)................................................7

*United States* v. *City of L.A.*, 288 F.3d 391 (9th Cir. 2002) ....................................29

*United States* v. *Metropolitan St. Louis Sewer Dist.*,
      569 F.3d 829 (8th Cir. 2009) ..........................................................................22

*United States* v. *Texas E. Transmission Corp.*,
      923 F.2d 410 (5th Cir. 1991) ..........................................................................24

**STATUTES:**

National Voter Registration Act (NVRA), 42 U.S.C. 1973gg *et seq.* ......................12

Voting Rights Act (VRA), 42 U.S.C. 1973 .................................................................3
      42 U.S.C. 1973a(c) ...........................................................................................6
      42 U.S.C. 1973j(f) ............................................................................................2

28 U.S.C. 1291 .............................................................................................................2

28 U.S.C. 1331 .............................................................................................................2

28 U.S.C. 1345 .............................................................................................................2

**RULES:**

Fed. R. Civ. P. 24(a).................................................................................................17

Fed. R. Civ. P. 24(a)(1)-(2)......................................................................................15

Fed. R. Civ. P. 24(a)(2)......................................................................................*passim*

Fed. R. Civ. P. 24(b) ................................................................................................17

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
————————————————

No. 14-40003

MARC VEASEY, *et al.*,

Plaintiffs-Appellees

v.

RICK PERRY, *et al.*,

Defendants
————————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee

TEXAS LEAGUE OF YOUNG VOTERS EDUCATION FUND, *et al.*,

Intervenor Plaintiffs-Appellees

v.

STATE OF TEXAS; *et al.*,

Defendants

TRUE THE VOTE,

Movant-Appellant
————————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
————————————————

BRIEF FOR THE UNITED STATES AS APPELLEE
————————————————

## JURISDICTIONAL STATEMENT

This is an interlocutory appeal from the district court's denial of True the Vote's motion to intervene as a defendant in this case as of right or, alternatively, by permission. Plaintiffs have alleged violations of federal law and the United States Constitution, and the district court has jurisdiction under 28 U.S.C. 1331, 1345 and 42 U.S.C. 1973j(f).

On December 11, 2013, the district court issued its order denying True the Vote's motion to intervene. ROA.1357-1358.[2] True the Vote filed a timely notice of appeal (ROA.1380-1382), but then withdrew that notice of appeal in the district court (ROA.1444-1446) before it was docketed by this Court. On December 20, 2013, True the Vote filed a second notice of appeal. ROA.1447-1449.

On appeal, True the Vote challenges only the district court's denial of its motion to intervene as of right. See Br. 9-26. Accordingly, this Court has jurisdiction under 28 U.S.C. 1291. See *City of Hous.* v. *American Traffic Solutions, Inc.*, 668 F.3d 291, 293 (5th Cir. 2012); *Edwards* v. *City of Hous.*, 78 F.3d 983, 992 (5th Cir. 1996) (en banc).

---

[2] "ROA.___" refers to the electronic record on appeal. "Doc. ___" refers to the docket entry number of filings in Consolidated Case No. 13cv193 (S.D. Tex.) that are not included in the ROA. District court filings from the member cases that are not included in the ROA are cited by reference to the case name and the docket entry number in the relevant case. "Br. __" refers to pages of appellant's opening brief.

## STATEMENT OF THE ISSUE

Whether the district court correctly denied True the Vote's motion to intervene as a defendant as of right, where True the Vote failed to satisfy three of the four requirements for mandatory intervention.

## STATEMENT OF THE CASE

a.  This appeal is from a district court action involving four consolidated challenges to Texas's photographic voter identification provision for in-person voters, Senate Bill 14 (S.B. 14).  See *Veasey* v. *Perry*, No. 13cv193 (S.D. Tex., filed June 26, 2013) (lead case); *United States* v. *State of Tex.*, No. 13cv263 (S.D. Tex., filed Aug. 22, 2013); *Texas State Conference of NAACP Branches* v. *Steen*, No. 13cv291 (S.D. Tex., filed Sept. 17, 2013); *Ortiz* v. *State of Tex.*, No. 13cv348 (S.D. Tex., filed Nov. 5, 2013).  Collectively, plaintiffs allege, *inter alia*, that S.B. 14 violates Section 2 of the Voting Rights Act (VRA), 42 U.S.C. 1973, and the Fourteenth and Fifteenth Amendments of the United States Constitution, because the law is intentionally discriminatory and will have a racially discriminatory result.  ROA.1300-1333 (Sec. Am. Compl. in *Veasey*); ROA.6055-6069 (Compl. in *United States* v. *Texas*); *Texas State Conference of NAACP Branches*, Doc. 1 at 1-27 (Compl.); *Ortiz*, Doc. 1 at 1-22 (Compl.).  Plaintiffs have sought both declaratory and injunctive relief.  ROA.1330-1331; ROA.6068; *Texas State Conference of NAACP Branches*, Doc. 1 at 26-27; *Ortiz*, Doc. 1 at 20-21.

- 4 -

A week after commencing its case, the United States filed an unopposed

motion (ROA.158-161) to consolidate its action with *Veasey*, which the district

court granted on August 30, 2013 (ROA.165-166).  After the Texas State

Conference of NAACP Branches and the Mexican American Legislative Caucus of

the Texas House of Representatives subsequently filed suit challenging S.B. 14,

they filed a motion to consolidate their case with *Veasey* and the federal

government action (ROA.361-363); the court granted that motion on September

19, 2013 (ROA.453-454).

In addition to ruling on the second motion to consolidate, the court granted

plaintiff-intervenor status to the Texas League of Young Voters Education Fund

and Imani Clark (Texas League of Young Voters) and ordered the clerk to file their

complaint in intervention on the docket sheet.  ROA.369.[3]  Like plaintiffs, Texas

League of Young Voters alleged that S.B. 14 violated Section 2 of the VRA and

the United States Constitution, because the law was enacted with a racially

discriminatory purpose and will have a discriminatory result, and sought

declaratory and injunctive relief.  ROA.819-910.  Later, on November 15, 2013,

the court permitted the Texas Association of Hispanic County Judges and

---

[3]  Texas League of Young Voters filed an amended complaint adding Aurica
Washington, Crystal Owens, and Michelle Bessiake as individual plaintiffs-
intervenors.  ROA.819-910 (Am. Compl.).  The court later granted the request of
Washington and Owens to withdraw from the case.  See Doc. 237 at 2.

- 5 -

Commissioners and Maria Longoria Benevides (Texas HJ&C) to file a complaint in intervention alleging that S.B. 14 has a racially discriminatory purpose and will have a discriminatory result, in violation of Section 2 of the VRA and the United States Constitution, and seeking declaratory and injunctive relief.  ROA.5837-5838 (Tr. 11/15/13); ROA.1608-1626 (Am. Compl.).[4]  Both plaintiff-intervenor groups were granted permissive intervention (ROA.369, ROA.5838), which no party opposed (ROA.307-312, ROA.609-613, ROA.5837-5838).

Finally, on January 10, 2014, the court granted the *Ortiz* plaintiffs' motion to consolidate their action with *Veasey* and the other two member cases.  ROA.1551-1552.

The court placed the consolidated case on an expedited schedule – with a bench trial scheduled to begin on September 2, 2014 – to enable it to render a decision on S.B. 14's legality prior to the November 2014 general election.  ROA.1024-1026, ROA.5862-5863.[5]

b.  Meanwhile, on September 25, 2013, True the Vote filed a motion to intervene as a defendant as of right or, in the alternative, by permission in the

---

[4]  The court permitted Texas HJ&C to later add Hidalgo County as a plaintiff-intervenor.  ROA.5560.

[5]  Although the court has modified some of the discovery and pre-trial deadlines, trial has remained scheduled for September 2, 2014, since the district court's first omnibus scheduling order.  See Doc. 231 at 1-4.

- 6 -

United States' action against Texas.  ROA.462-475.  True the Vote sought to

intervene for three reasons:  to defend the legality of S.B. 14; to ensure that the

district court weighed the scope of any equitable relief it might order under Section

3(c) of the VRA, 42 U.S.C. 1973a(c),[6] against what it described as the United

States' "history of court sanctions and abusive conduct in the preclearance process

over the last two decades"; and to protect its organizational interests and the

interests of its members and volunteers.  ROA.463-464.

    In support of its motion to intervene as of right, True the Vote asserted that

if the United States were to succeed in having S.B. 14 enjoined, its organizational

interest in "ensur[ing] that only eligible voters are casting ballots in Texas will be

impaired" and its "members' and volunteers' confidence in the integrity of the

election process will be undermined."  ROA.468.  True the Vote also argued that

its members and volunteers "have a direct and protectable interest in ensuring their

votes are not diluted as a result of" the United States' action to enjoin S.B. 14, and

that it was entitled to intervene to protect that claimed injury.  ROA.469.

---

    [6]  Upon a finding that violations of the Fourteenth or Fifteenth Amendment
justifying equitable relief have occurred, Section 3(c) of the VRA allows a court to
retain jurisdiction over a State or political subdivision in order to prevent it from
implementing new voting qualifications, prerequisites to voting, or standards,
practices, or procedures without first demonstrating that the voting change does not
have the purpose and will not have the effect of denying or abridging the right to
vote on account of race, color, or membership in a language minority group.  See
42 U.S.C. 1973a(c).

- 7 -

True the Vote further argued that Texas could not adequately protect its interest for two reasons.  ROA.470-473.  First, True the Vote alleged that, in prior proceedings between the United States and Texas under Section 5 of the VRA, 42 U.S.C. 1973c – see *Texas* v. *Holder*, 888 F. Supp. 2d 113 (D.D.C. 2012) (denying Texas judicial preclearance of S.B. 14), vacated and remanded, 133 S. Ct. 2886 (2013) – Texas failed to object to what True the Vote characterized as "intrusive discovery [by the United States] regarding True the Vote's constitutionally protected political speech and legislative activities."  ROA.470-471.[7]  True the Vote argued that any inquiries during the Section 5 case into its communications with Texas legislators had "improperly considered constitutionally protected activities by True the Vote to be relevant to [the] allegation that SB 14 was enacted with a racially discriminatory purpose."  ROA.471.  True the Vote asserted that, because the United States has alleged in this case that S.B. 14 has a racially discriminatory purpose, True the Vote has an interest "in defending its constitutionally protected activities" and "rebutting [the United States'] possible false inferences as to the intent of SB 14" that may be represented inadequately by Texas.  ROA.471.

---

[7]  True the Vote did not seek to intervene in the Section 5 litigation and thus was not a party to the proceedings before the District Court for the District of Columbia.  Nor did it object to or seek to quash any discovery requests in that case.

Second, True the Vote argued that Texas lacked the "wellspring of data which [True the Vote] has accumulated about ineligible voter registrations on the rolls in Texas and how these statewide problems with voter registrations provided a motivation for enactment of SB 14." ROA.471.  It asserted that Texas had introduced no evidence in the Section 5 case that voter rolls in Texas are filled with "ineligible, dead and duplicate voters" (ROA.471), and that "the citizens of Texas" thus lacked an "advocate positioned to provide th[e] [district court] with the data relating to faulty election administration" (ROA.472).  Finally, True the Vote argued that the state defendants could not adequately represent the interest of its "volunteers and members in small communities in Texas who do not wish the outcome of this case" to include relief under Section 3(c) of the VRA.  ROA.472-473.

As an alternative to seeking to intervene as of right, True the Vote also argued that it met the criteria for permissive intervention.  ROA.473-474.

c.  The United States opposed True the Vote's motion (ROA.616-709).  Its primary argument was that True the Vote did not satisfy three of the four prerequisites for intervention as of right, since it had no direct interest that would be impaired by a decision in the underlying case and any interests it did have would be adequately represented by the state defendants (or by its participation as

an amicus).[8]  In addition, the United States argued that True the Vote was
improperly seeking to expand the scope of the litigation.  ROA.616-626.

     With respect to the requirement that an aspiring intervenor of right show that
it has an interest related to the subject of the underlying action, the United States
argued that True the Vote had not identified any particularized injury it would
suffer if the district court were to strike down S.B. 14; rather, True the Vote had
asserted only a generalized interest in advancing its organizational mission,
ensuring the confidence of its members and volunteers in the electoral process, and
preventing any illegal votes from diluting those ballots cast by eligible voters.
ROA.618-619.  Moreover, the United States argued that True the Vote could not
assert the interests of its "members," because it did not, in fact, have any members;
could not have members under its Certificate of Formation; could not declare its
funders to be members under state law; and did not demonstrate the indicia of
membership that would permit it to assert the interests of associated third parties.
ROA.620.  The United States further argued that True the Vote could not assert a
direct or substantial interest in the litigation or act on behalf of local governments
simply because its volunteers paid taxes in Texas.  ROA.620.

---

[8]  The United States did not dispute the timeliness of True the Vote's motion
under Rule 24(a)(2).

- 10 -

With respect to the requirement that an aspiring intervenor show that existing defendants could not adequately protect its interest, the United States argued that True the Vote had failed to overcome the presumption that the State would provide adequate representation as articulated in *Edwards* v. *City of Houston*, 78 F.3d 983 (5th Cir. 1996) (en banc).  ROA.620-621.  The United States pointed out that the State was vigorously defending S.B. 14 in this case, just as it had in the Section 5 case before the District Court for the District of Columbia, and that the State opposed any award of equitable relief under Section 3(c) of the VRA. ROA.621.

The United States also noted the lack of any adversity of interest between True the Vote and Texas, explaining that Texas had indeed objected in the Section 5 litigation to discovery regarding constituent communications, including those involving True the Vote.  ROA.622.  The United States further argued that any objection by True the Vote to such discovery requests in this case was both speculative and premature.  ROA.622.[9]  As for True the Vote's claim that Texas would not admit inaccuracies in its voter registration rolls, the United States

---

[9]  Indeed, the United States noted that if any party were to seek third-party discovery concerning communications by True the Vote's donors or volunteers, those individuals could move to quash the relevant subpoenas, and that if any party sought discovery from the State regarding its communications with True the Vote, the organization potentially could seek to intervene at that time for the limited purpose of opposing such discovery.  ROA.622.

responded that Texas had, in fact, pointed to the inaccuracy of its voter registration rolls during the Section 5 trial.  ROA.622.  The United States also noted that given the State's prior challenges to Section 5 of the VRA, as well as its opposition to court-ordered preclearance under Section 3(c) of the VRA in another pending case, the court could anticipate that Texas would vigorously challenge the imposition of any applicable relief under Section 3(c) of the VRA in this case.  ROA.622-623.  Finally, the United States argued that True the Vote did not allege and could not demonstrate any collusion between the United States and Texas.  ROA.623.[10]

d.  On December 11, 2013, after having taken True the Vote's motion under advisement during a mid-November telephone conference (ROA.5838-5850), the district court denied the motion to intervene in its entirety.  ROA.1357-1358.

The court found that True the Vote had failed to satisfy the burden of showing that it was entitled to intervene as of right.  ROA.1357.  True the Vote had failed to show "a particularized interest that the litigation threatens and that no existing party to the suit adequately represents."  ROA.1357.  Rather, adopting the reasoning set forth in the district court's opinion in *United States* v. *Florida*, No. 4:12cv285 (N.D. Fla., filed Nov. 6, 2012) (ROA.630-636), which also had denied

---

[10]  The United States also opposed permissive intervention, arguing that any exercise of discretion by the court to grant True the Vote's request would prevent the efficient resolution of the case.  ROA.623-624.  The United States noted, however, that the court could allow organizations such as True the Vote to file a brief as amicus curiae at appropriate stages of the litigation.  ROA.625.

an attempt by True the Vote to intervene in a voting-rights case, the court
concluded that "True the Vote's interests are generalized and are adequately
represented by the State Defendants."  ROA.1357 (citing *Florida*, Slip Op. 3-4
(ROA.632-633)).[11]

In addition, the court below declined to exercise its discretion to grant True
the Vote's motion for permissive intervention, finding that the organization's
"intended contribution to this case may be accomplished without the necessity of,
or burden incident to, making it a party."  ROA.1358.  The court stated, however,
that it would "duly consider any motion for leave to file briefing as *amicus curiae*
that True the Vote may feel compelled to file."  ROA.1358.

---

[11]  *United States* v. *Florida* involved a challenge under the National Voter
Registration Act (NVRA), 42 U.S.C. 1973gg *et seq.*, to the timing of Florida's
maintenance of its voter lists.  See *Florida*, Slip. Op. 1 (ROA.630).  The district
court there rejected True the Vote's argument that fulfilling its mission constituted
a direct and substantial interest in the State's voter-registration activities,
explaining that all of Florida's voters shared a generalized interest in electoral
integrity that "plainly do[es] not afford a voter * * * a *right* to intervene under Rule
24(a)."  *Florida*, Slip. Op. 3 (ROA.632).  In addition, the court noted that Florida
could be expected to adequately represent any interests True the Vote had in
defending the State's use of updated lists, especially given the State's repeated
willingness to litigate vigorously against the United States in voting matters.  See
*Florida*, Slip. Op. 3 (ROA.632).

The court in *Florida* also found that True the Vote's asserted direct interest
in monitoring official voter registration lists to ensure the State maintained
accurate records would not be implicated by the case, and raised an issue beyond
the scope of the existing litigation.  See *Florida*, Slip. Op. 4 (ROA.633).  The court
in *Florida* thus concluded that "True the Vote plainly is not entitled to intervene as
of right."  *Florida*, Slip Op. 4 (ROA.633).

## SUMMARY OF ARGUMENT

The district court correctly concluded that True the Vote did not meet the requirements for intervention as of right under Rule 24(a)(2). True the Vote now asserts numerous arguments before this Court that it never presented to the district court. Because the district court had no occasion to consider these arguments, they are not appropriate for this Court's appellate review. Even if this Court considers the entirety of True the Vote's arguments on appeal, however, the district court's order denying intervention as of right should be affirmed.

True the Vote filed a timely motion to intervene, but it has failed to establish that it has a legally protectable interest in the proceedings below that is recognized by substantive law and would be adversely affected if it is not permitted to intervene. Indeed, this litigation in no way prevents True the Vote from pursuing its asserted mission of ensuring the accuracy of voter registration lists and the integrity of local, state, and federal elections in Texas and across the country.

Nor has True the Vote shown, as required, a risk that Texas will not adequately represent whatever interest it has. As a governmental defendant, Texas is presumed to mount a good-faith defense of its laws and to adequately represent the interest of its citizens. In addition, True the Vote and Texas share the same ultimate objective: defending S.B. 14's legality. Where a would-be intervenor shares the same objective as a party, adequate representation by the existing party

is presumed.  True the Vote has proffered no facts of the type laid out in *Edwards* v. *City of Houston*, 78 F.3d 983 (5th Cir. 1996) (en banc), to overcome the especially strong presumptions applicable in this case.

To the extent that True the Vote wishes to be heard by the district court despite failing to satisfy Rule 24(a)(2), the district court has invited it to seek leave to file an amicus brief.  In so doing, the court may consider True the Vote's views while also ensuring that it expeditiously renders a decision on plaintiffs' claims.

## ARGUMENT

## THE DISTRICT COURT CORRECTLY DENIED TRUE THE VOTE'S MOTION TO INTERVENE AS OF RIGHT

A.    *Standard Of Review*

This Court reviews *de novo* a district court's order denying intervention as of right.  *Edwards* v. *City of Hous.*, 78 F.3d 983, 995 (5th Cir. 1996) (en banc).

B.    *The District Court Correctly Concluded That True The Vote Did Not Satisfy The Criteria For Intervention As Of Right*

Federal Rule of Civil Procedure 24(a)(2) permits a nonparty to intervene in litigation if four requirements are met:  (1) the application for intervention is timely; (2) the applicant has an interest that is related to the property or transaction that is the subject of the underlying action; (3) the disposition of the case into which the applicant seeks to intervene may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not

adequately represented by the existing parties.  See Fed. R. Civ. P. 24(a)(1)-(2);

*Edwards*, 78 F.3d at 999.  If an applicant fails to satisfy any one requirement, a

court must deny intervention as of right.  See *Edwards*, 78 F.3d at 999.

The timeliness of True the Vote's motion is not at issue.  But True the Vote

failed to satisfy the additional criteria necessary for mandatory intervention.  True

the Vote cannot show a legally protectable interest that is related to plaintiffs'

claims and that would be impaired unless it is allowed to intervene.  Nor can True

the Vote show that its asserted interest is not adequately represented by the State.

1.    *True The Vote Cannot Establish Any Interest In The Litigation That Is Legally Protectable And Would Be Impaired Absent Intervention*

Intervention as of right is appropriate only where the applicant has a "direct,

substantial, [and] legally protectable interest" in the subject matter, property, or

transaction that forms the basis of the controversy in which the applicant seeks to

intervene.  *New Orleans Pub. Serv., Inc.* v. *United Gas Pipe Line Co.*, 732 F.2d

452, 463 (5th Cir.) (en banc) (citation omitted), cert. denied, 469 U.S. 1019 (1984);

*Edwards*, 78 F.3d at 1004; *John Doe No. 1* v. *Glickman*, 256 F.3d 371, 379 (5th

Cir. 2001).  This Court has explained that a would-be intervenor must establish

"something more than a mere economic interest; rather, the interest must be 'one

which the *substantive law* recognizes as belonging to or being owned by the

applicant.'"  *Ross* v. *Marshall*, 426 F.3d 745, 757 (5th Cir. 2005) (quoting *United*

*Gas Pipe Line Co.*, 732 F.2d at 464), cert. denied, 549 U.S. 1166 (2007); see also *Edwards*, 78 F.3d at 1004.

In addition, "[w]ith respect to a potential intervenor seeking to *defend* an interest being attacked by a plaintiff in a lawsuit," the would-be intervenor should be the real party in interest. *Ross*, 426 F.3d at 757 & n.46. This Court has stated that a proposed defendant-intervenor "is a real party in interest when the suit was intended to have a 'direct impact' on the intervenor." *Id.* at 757 n.46 (citation omitted). If the movant shows such an interest, it then must demonstrate that disposition of the action "may, as a practical matter, impair or impede [the movant's] ability to protect that interest." *Id.* at 760 (brackets omitted) (quoting *Sierra Club* v. *Espy*, 18 F.3d 1202, 1207 (5th Cir. 1994)). Because True the Vote lacks any interest in the proceedings below that is either legally cognizable or would be impaired as a practical matter absent intervention, it cannot meet the requirements for intervention as of right.

a. As an initial matter, True the Vote lacks the sort of direct, substantial, and legally protectable interest in the litigation below that this Court has recognized as necessary to intervene as a matter of right under Rule 24(a)(2).

In its motion to intervene, True the Vote argued that the photographic identification that in-person voters must present under S.B. 14 helps it to fulfill its asserted mission of protecting against electoral fraud by ensuring that only eligible

voters cast a ballot in local, state, and federal elections in Texas.  ROA.468-469.

But True the Vote's asserted interest in electoral integrity is nothing more than a

generalized concern shared by all voters and differs significantly from the sort of

direct, substantial, and legally protectable interests this Court has found sufficient

to satisfy a would-be intervenor's required showing under Rule 24(a)(2).  In

concluding that True the Vote asserted only a generalized concern as opposed to a

legally protectable interest in the litigation, the district court properly relied on

*United States* v. *Florida*, No. 4:12cv285 (N.D. Fla., filed Nov. 6, 2012), which

likewise denied a motion by True the Vote to intervene as of right based on its

interest in promoting electoral integrity and preventing voter fraud.  ROA.1357

(citing *Florida*, Slip. Op. 3-4 (ROA.632-633)).

True the Vote implies (Br. 12-13 & 13 n.10) that the district court unfairly

granted numerous other organizations and individuals intervenor status to

challenge S.B. 14 while denying its motion to intervene to defend the law.  But it

fails to mention that those other parties were *permitted* to intervene as *plaintiffs*

only under Rule 24(b), and not as a matter of right under Rule 24(a).  Significantly,

unlike True the Vote, which has no independent stand-alone claims that it could

have brought in this case, those parties that the district court permitted to intervene

as plaintiffs all could have brought their own actions challenging S.B. 14 and

moved to consolidate those actions with *Veasey* (just as the plaintiffs in the three

member cases did).  Because True the Vote instead seeks to intervene in this case

to *defend* S.B. 14 *as a matter of right*, it must show that it is a real party in interest

and that the United States' suit was intended to have a direct impact upon it.  See

*Ross*, 426 F.3d at 757 & n.46; cf., *e.g.*, *Industrial Commc'ns & Elecs., Inc.* v. *Town

of Alton*, 646 F.3d 76, 77-81 (1st Cir. 2011) (allowing homeowner-intervenors with

property border less than 200 feet from proposed cell phone tower to defend denial

of zoning variance even after Town settled case with telecom company based on

their legal interest under state law in the protection that the zoning laws afford to

their property); *City of Emeryville* v. *Robinson*, 621 F.3d 1251, 1259 (9th Cir.

2010) (property owners facing extinction of state law rights of contribution for site

clean-up costs for contamination had legally protectable interest supporting

intervention as of right in manufacturer's action to enforce prior settlement

agreement with City).  This it cannot do.  True the Vote has not even addressed, let

alone satisfied, this showing.

Having failed to demonstrate in its motion to the district court that it has a

direct, substantial, and legally protectable interest in this case, True the Vote now

argues (Br. 16) that it has a particularized interest in the proceedings below based

on its "successful[ ] campaign[ ] for the creation and passage of SB 14" (Br. 4).

Even if this argument had merit – and it does not, as the United States explains

below – it was never presented to the court below and thus is improper here.

"As a general principle of appellate review," this Court "refuse[s] to consider issues not raised below."  *Conley* v. *Board of Trs.*, 707 F.2d 175, 178 (5th Cir. 1983); accord *Noatex Corp.* v. *King Constr. of Hous., L.L.C.*, 732 F.3d 479, 486 (5th Cir. 2013).  Before the district court, True the Vote referred only in passing to its support of S.B. 14.  ROA.464 ("Proposed Intervener has a long history of publically defending SB 14 and played a significant role in the passage of the statute.").  That fleeting reference cannot be construed as an argument that that support was the source of True the Vote's legally cognizable interest in this case.  Because True the Vote failed to develop this argument below (ROA.462-475), the district court had no occasion to consider it.  Accordingly, this Court should limit its review to the asserted interest True the Vote relied on when it sought to intervene as of right in the district court proceedings – namely, its generalized desire to prevent electoral fraud and ensure the accuracy of states' voter registration lists.  ROA.464-466, ROA.468-469.

But even if this Court were to entertain True the Vote's argument in the first instance, that argument is meritless.  The Supreme Court recently reiterated that proponents or supporters of legislation "have no role—special or otherwise—in the enforcement of [state law]" once enacted and "therefore have no 'personal stake' in defending its enforcement that is distinguishable from the general interest of every [state] citizen."  *Hollingsworth* v. *Perry*, 133 S. Ct. 2652, 2663 (2013).

Accordingly, the Supreme Court has held that organizations and individuals seeking to vindicate the legality of a generally applicable state law lack the particularized interest sufficient to create a case or controversy, and confer standing, under Article III of the United States Constitution. See *id.* at 2661-2663. To the extent that True the Vote argues (Br. 16-18) that this Court's decision in *Brumfield* v. *Dodd*, No. 13-31262, 2014 WL 1395663 (5th Cir. Apr. 10, 2014), supports a broad view of who, based on standing doctrine, may intervene as of right to defend state law in public interest cases, well-established Supreme Court precedent flatly contradicts its position.

Ignoring the Supreme Court's pronouncement in *Perry*, True the Vote relies almost exclusively on this Court's earlier decision in *City of Houston* v. *American Traffic Solutions, Inc.*, 668 F.3d 291 (5th Cir. 2012), to argue that its support for S.B. 14 entitles it to intervene as of right. See Br. 13-16. Even if the analysis in *American Traffic Solutions* survives *Perry*, this Court's highly fact-bound resolution of that case lends no support to True the Vote's position here.

In *American Traffic Solutions*, two City residents organized and financed a political campaign to force the City to cease using a red light camera system to generate traffic tickets. 668 F.3d at 292-294. They ultimately succeeded in having the camera system repudiated under a city charter amendment. *Id.* at 293. When the residents later learned that the City had brought a declaratory judgment action

against the system's operator in order to settle its contractual obligations, they moved to intervene as of right in the litigation. *Id.* at 293. Their motion was denied despite their claim that the City was unlikely to defend the charter amendment vigorously based on its financial interest in the system's continuation as well as its agreement to reinstate the system during the pendency of the declaratory judgment action. *Id.* at 293-294.

In holding that the would-be intervenors had stated a sufficient interest in the litigation to support intervention as of right under Rule 24(a)(2), this Court warned that "court[s] must be circumspect about allowing intervention of right by public-spirited citizens in suits by or against a public entity for simple reasons of expediency and judicial efficiency." *American Traffic Solutions, Inc.*, 668 F.3d at 294. But this Court noted the "unique," *ibid.*, facts of the case: the would-be intervenors had "launched a political campaign, spending over $200,000 of their personal funds, * * * organized a petition drive, and of course signed petitions, for a city charter amendment vote on whether the system's use could be continued," *id.* at 292; they had succeeded in having the system repudiated despite the City's "nearly unanimous, well funded, and longstanding opposition" to their efforts, which implicated "millions of dollars of revenue to City coffers during a period of considerable economic uncertainty," *id.* at 294; and they had "demonstrated a particular interest in cementing their electoral victory and defending the charter

amendment itself," *ibid.* In reversing the district court's denial of intervention as of right, this Court also emphasized numerous facts supporting a conclusion that the intervenors' interest might have been adverse to and inadequately represented by the City. See *ibid.*; see also pp. 26-35, *infra* (discussing this additional requirement for intervention as of right under Rule 24(a)(2)).

But True the Vote cannot wrap itself in the cloak of *American Traffic Solutions*. True the Vote disregards both this Court's general warning against "allowing intervention of right by public-spirited citizens in suits by or against a public entity," *American Traffic Solutions, Inc.*, 668 F.3d at 294, and the factual differences between its situation and that of the applicants in that case. In this case, countless organizations and individuals apart from True the Vote provided testimony and support for S.B. 14, any one of which could intervene as of right in this action under True the Vote's asserted rationale. But as another court of appeals aptly stated, "a federal case is a limited affair, and not everyone with an opinion is invited to attend." *United States* v. *Metropolitan St. Louis Sewer Dist.*, 569 F.3d 829, 841 (8th Cir. 2009) (citation omitted); see also *id.* at 840 ("Judicial efficiency is not promoted by allowing intervention by a party with no interest upon which it could seek judicial relief in a separate lawsuit." ). The specific facts and circumstances of this case support the district court's determination that True

the Vote did not establish the direct, substantial, and legally protectable interest in the litigation necessary for it to intervene as of right.

True the Vote also argues (Br. 18-19) that because the United States, in the Section 5 litigation before the District Court for the District of Columbia, sought to show that S.B. 14 was enacted with a discriminatory purpose, and because True the Vote communicated with sponsors of S.B. 14 and testified in favor of the bill, that it has a particularized interest in defending the law against allegations that it is racially discriminatory. But again, True the Vote did not raise this argument in the district court below (ROA.464-469); thus, it is not properly before this Court on appeal. Rather, True the Vote argued only that Texas's purported failure to protect its communications from discovery in the Section 5 litigation demonstrates that the State may inadequately represent its interests in this case. ROA.470-471. In any event, as the United States pointed out in its response below, Texas vigorously objected to discovery regarding True the Vote's support for S.B. 14 and claimed a legislative privilege with respect to constituent communications, including those involving True the Vote, as well as any testimony about the purpose of S.B. 14 that was not already in the public record. ROA.621-622, ROA.655-681. Moreover, True the Vote never sought to intervene in the Section 5 case. Nor did it object to the United States' discovery requests in that case. Indeed, True the Vote has not objected to any discovery in *this* case.

- 24 -

More to the point, the pertinent question is whether the *Texas Legislature* enacted S.B. 14 for a racially discriminatory purpose, not whether True the Vote or any other private proponents of S.B. 14 acted with racially discriminatory intent. Thus, True the Vote lacks any particularized interest in participating in the litigation below in order to demonstrate *its* intent with respect to S.B. 14. Indeed, True the Vote's argument demonstrates only that its participation will inject tangential issues into a case that is already on an expedited schedule.

b. Even if True the Vote could show a direct, substantial, and legally protectable interest in the subject of the underlying action, the litigation below does not implicate True the Vote's ability to protect such an interest. Indeed, the outcome of this case in no way impairs True the Vote's ability to engage in election monitoring activities or seek increased accuracy in states' maintenance of their voter registration lists.

This Court recently reiterated that a movant cannot merely show that the outcome of litigation, as a "theoretical" as opposed to a "practical" matter, may impair its ability to protect its interest. See *Brumfield*, 2014 WL 1395663, at *5 (citation omitted); *United States* v. *Texas E. Transmission Corp.*, 923 F.2d 410, 414 (5th Cir. 1991). The consequences of any decision in this case are a far cry from the ones this Court has previously found sufficient. Although True the Vote might favor having S.B. 14 in place as an additional voter-integrity measure, it has

not demonstrated that a decision enjoining S.B. 14 will impair or impede its ability to engage in any of the activities it identified in the district court as integral to its public interest mission.  These include, for example, "train[ing] poll watchers who monitor elections for compliance with state and federal law"; "catalogu[ing] possible instances of voting irregularities or fraud in the polling place"; "obtain[ing] and examin[ing] official lists of eligible voters and other voter registration data from states, counties, and localities across the United States"; "review[ing] official lists of eligible voters and voter registration data" and "compar[ing] these lists and data to other publically available data to identify possible inaccuracies and deficiencies"; and "fil[ing] [citizen complaints] with the appropriate election officials."  ROA.465.

Although a decision by the district court enjoining S.B. 14 might change *how* True the Vote instructs its volunteers and fulfills its election-monitoring activities, the same is true for any public interest organization that must alter its approach in light of new court decisions or changes to governing law.  Indeed, True the Vote's earlier support for a more permissive voter ID law (Br. 4-5) demonstrates that its ability to fulfill its organizational mission does not, as a practical matter, depend on S.B. 14's ultimate success.  Unsurprisingly, True the Vote fails to explain in any detail (Br. 20) how its interest in "accurately

catalogu[ing] and report[ing] instances of voter fraud" or "performing election-monitoring activities" will be impaired as a practical matter if S.B. 14 is enjoined.

In addition, True the Vote argues (Br. 21-22) that "the *stare decisis* effect of a judgment in [the] federal government's favor could be relied upon as precedent in subsequent suits against True the Vote to enjoin its election-monitoring activities and its cataloging and reporting of voter fraud."  Not only did True the Vote fail to make this argument below (ROA.464-469), but it is purely speculative or "theoretical."  True the Vote does not even attempt to explain how a decision enjoining S.B. 14 would undermine its ability to defend its election-monitoring activities in any future lawsuit that a yet-unidentified plaintiff might bring against the organization to enjoin its activities under some unidentified law.

Because True the Vote failed to establish that it has any interest in the district court proceedings that is legally protectable and would be impaired absent intervention, the district court correctly denied its motion to intervene as of right.

2.    *The State Defendants Adequately Represent True The Vote's Concerns*

Because True the Vote failed to establish a legally protectable interest in the litigation that would be impaired absent intervention, the district court did not need to consider whether any existing party adequately represented whatever interests it might have.  Yet the court also considered this final requirement, concluding that the State adequately represented True the Vote's asserted interests.  ROA.1357.

The court properly denied True the Vote's motion on this additional, independent ground.

An applicant for intervention bears the burden of establishing that an existing party's representation of its interest "may be" inadequate. *Edwards*, 78 F.3d at 1005 (citation omitted). This "minimal" burden, however, "cannot be treated as so minimal as to write the requirement completely out of the rule." *Ibid.*; see also *Brumfield*, 2014 WL 1395663, at *6 ("This requirement * * * must have some teeth."). Thus, this Court has explained that adequate representation should be presumed if one of two conditions applies. See *Edwards*, 78 F.3d at 1005. In this case, *both* presumptions apply.

The first presumption regards suits in which the "putative representative is a governmental body or officer charged by law with representing the interests of the absentee, * * * whether the would-be intervenor is a citizen or subdivision of the governmental entity." *Edwards*, 78 F.3d at 1005. In such cases, and this is one, the movant must satisfy the "heightened showing" that "its interest is in fact different from that of the governmental entity and that the interest will not be represented by it." *Ibid.* (alterations omitted); see also *Hopwood* v. *Texas*, 21 F.3d 603, 605 (5th Cir. 1994). This heightened showing applies because "the public entity must normally be presumed to represent the interests of its citizens and to mount a good faith defense of its laws." *American Traffic Solutions, Inc.*, 668 F.3d

at 294; see also *Cotter* v. *Massachusetts Ass'n of Minority Law Enforcement Officers*, 219 F.3d 31, 35 (1st Cir. 2000) ("Where the applicant seeks to intervene as a defendant and the existing defendant is a governmental entity, this court and a number of others start with a rebuttable presumption that the government will defend adequately its action."), cert. denied, 531 U.S. 1072 (2001).[12]

Here, True the Vote did not even address, let alone satisfy, this "heightened showing."  ROA.470-473.  And on appeal, True the Vote inexplicably dismisses (Br. 21) the first presumption as inapplicable.  True the Vote is wrong.  Texas has vigorously defended S.B. 14, both in the Section 5 litigation where it sought judicial preclearance and in this case, and it can be expected to continue to do so.  Indeed, True the Vote has pointed to no facts suggesting that Texas will not mount a good-faith defense of S.B. 14 against plaintiffs' claims.

Second, this Court has announced a presumption of adequate representation when the movant "has the same ultimate objective as a party to the lawsuit." *Edwards*, 78 F.3d at 1005; see also *Kneeland* v. *National Collegiate Athletic Ass'n*, 806 F.2d 1285, 1288 (5th Cir.) (denying mandatory intervention where would-be intervenors and defendants had same objective of preventing documents'

---

[12]  This Court has counseled that the presumption attaches even if the government defendant consents to intervention by "public-spirited citizens," because courts also must consider "expediency and judicial efficiency."  *American Traffic Solutions, Inc.*, 668 F.3d at 294; see *Cotter*, 219 F.3d at 35 ("[T]here are other interests at stake, including * * * efficiently managing litigation.").

disclosure), cert. denied, 484 U.S. 817 (1987).  To overcome this second

presumption, the movant must show "adversity of interest, collusion, or

nonfeasance on the part of the existing party."  *Edwards*, 78 F.3d at 1005; see also

*Kneeland*, 806 F.2d at 1288.

True the Vote's argument falls short here as well.  True the Vote and Texas

share the same ultimate objective:  defending S.B. 14 as a valid voter-integrity

measure.  Differences over how best to achieve the same goal – *e.g.*, a dispute over

what documents best explain the rationale for S.B. 14 or best aid in its defense as a

racially non-discriminatory law (Br. 23-24) – do not mean that an existing party

and would-be intervenor lack a common interest.  Rather, they merely indicate that

Texas and True the Vote support different strategies for achieving that goal.  But a

disagreement over how best to litigate a case does not support intervention.  See,

*e.g.*, *United States* v. *City of L.A.*, 288 F.3d 391, 402-403 (9th Cir. 2002) ("Any

differences [the proposed intervenors and United States] have are merely

differences in strategy, which are not enough to justify intervention as a matter of

right.").  Nor does the mere fact that True the Vote seeks to rebut any inference

that it supported S.B. 14 for racially discriminatory reasons (Br. 24) show either

that it lacks a common interest with Texas in defending S.B. 14 as non-

discriminatory or that it has staked out a different litigating position from the State.

Likewise, True the Vote (Br. 24) has not shown adversity of interest in this case by

asserting that it seeks to demonstrate the legality of voter ID measures generally, and not simply that of S.B. 14.  Because True the Vote has failed to show, as it must, any adversity of interest, collusion, or nonfeasance on the part of the State, it cannot overcome the second presumption of adequate representation.

True the Vote primarily argues (Br. 22-23) that its interest is not adequately represented by the State because it does not have to balance the competing concerns the State must balance as a governmental entity.  It also argues (Br. 23) that it has additional evidence it seeks to offer regarding Texas's inadequately maintained voter rolls that the State failed to offer in the Section 5 case and may fail to offer in defense of S.B. 14 in this case.  But Texas did, in fact, offer evidence regarding its outdated and inaccurate voter registration rolls in the Section 5 case before the District Court for the District of Columbia.  ROA.621-622.  Regardless, this Court has already held that such arguments do not suffice to overcome the second presumption.

In *Hopwood*, this Court confronted similar arguments by black student associations seeking to intervene to defend against challenges to Texas's affirmative action policy for its higher education system.  See 21 F.3d at 604-606.  As in this case, only the plaintiffs, and not the State, opposed intervention.  See *id.* at 604. The student associations asserted that "they had an interest in the existing admissions policy and in the elimination of the vestiges of past discrimination in

the [University of Texas] Law School's admissions policy." *Ibid.*  The student

associations argued that the State could not adequately represent their interest

because "the State must balance competing goals while [the student associations]

are sharply focused on preserving the admission policy." *Id.* at 605.  As such, they

argued that, "because of its competing goals, the State is not in as good a position

to bring in evidence of present effects of past discrimination and current

discrimination." *Ibid.*

   This Court ruled that although the student associations "may have ready

access to more evidence than the State, we see no reason they cannot provide this

evidence to the State." *Hopwood*, 21 F.3d at 605.  This Court held this was

particularly true where the student associations "ha[d] been authorized to act as

amicus and we see no indication that the State would not welcome their

assistance." *Id.* at 606.  In affirming the district court's denial of the student

associations' motion to intervene, this Court explained that they had not met their

burden of demonstrating that they had a separate interest that the State would not

adequately represent, that the State would not strongly defend its affirmative action

program, or that they had a separate defense of the program that the State had

failed to assert. *Ibid.*  See also *Kneeland*, 806 F.2d at 1288 (in document

disclosure suit, rejecting mandatory intervention despite would-be intervenors'

"slightly greater interest" in non-disclosure of the documents than the existing

defendants).  The reasoning applied by this Court in *Hopwood* to reject the student associations' arguments likewise applies here to defeat True the Vote's arguments both that it is entitled to intervene as of right to offer certain evidence to the district court and that Texas may not adequately represent its interest.

True the Vote (Br. 22) relies upon this Court's decision in *Brumfield* to argue that the second presumption is overcome where a governmental entity's broad interest in representing its citizenry does not "align precisely" with the more particular interests of the movant group.  But this Court's holdings in *Brumfield*, *Sierra Club*, and *American Traffic Solutions* support no such proposition.  Rather, the reason why this Court found that the representation in those cases might have been inadequate was based on the specific facts of those cases and the competing interests of the governmental defendant as reflected in its conduct of litigation.  Indeed, the defendant's conduct in each of those cases is readily distinguishable from Texas's vigorous defense of S.B. 14 in both prior litigation and this case.

True the Vote mistakenly asserts (Br. 22) that the reason this Court determined, in *Brumfield*, that the interests of the state defendant and proposed intervenors "may not align precisely" was because a state defendant, as a general matter, will usually have more extensive interests than a would-be intervenor.  Rather, as this Court explained, their interests may not have been aligned because Louisiana conceded in the district court that its voucher program was subject to the

long-standing desegregation orders and decrees that the federal government sought

to enforce, while the proposed intervenors challenged that notion. See *Brumfield*,

2014 WL 1395663, at *6-7. Thus, this Court concluded that under the specific

facts of the case, "[t]he lack of unity in all objectives, combined with real and

legitimate additional or contrary arguments, [sufficed] to demonstrate that the

representation may be inadequate." *Id.* at *7.

Similarly, in finding a risk that the City would not adequately represent the

would-be intervenors' interest in defending the city charter amendment at issue in

*American Traffic Solutions*, this Court pointed to specific facts raising "substantial

doubts about the City's motives and conduct in its defense of the litigation with

[the camera system's operator]." 668 F.3d at 294. In particular, this Court

explained that without the intervenors' participation, the City "might well be

inclined to settle the litigation on terms that preserve the adverse ruling on the

charter amendment and thus preserve its flexibility to reinstate red light cameras in

the future." *Ibid.* This Court explained that the totality of the circumstances

supported such a conclusion, including, for example, "the haste of the litigation,

the City's pecuniary motives, [its] extended opposition to the charter amendment,

the agreed order to leave the cameras in place, and the attempt to reinstate them

before the suit had concluded." *Ibid.*

Finally, *Sierra Club* is inapposite.  In that case, two trade associations representing purchasers of timber from Texas's national forests appealed the denial of their motion to intervene as of right in a case challenging the United States Forest Service's system of forest management for national forests in Texas.  18 F.3d at 1203-1204.  As a result of a preliminary injunction issued during the litigation, the Forest Service advised timber purchasers that it would refrain from offering not only certain planned sales challenged by the plaintiffs but also all of those implicated by that system of forest management.  *Id*. at 1204.  The trade associations sought to intervene at that time to protect their purchasers' property interest in existing timber contracts threatened by the Forest Service's decision.  *Id*. at 1204, 1207.  This Court held that the Forest Service's representation of the purchasers' interest might run a risk of being inadequate because, as evidenced by its letter applying the preliminary injunction to all future timber sales, the Forest Service "represents the broad public interest, not just the economic concerns of the timber industry."  *Id*. at 1207.  Again, this Court's holding was based on the specific facts of the case and does not support the broad proposition that a defendant's representation may be inadequate whenever its interests do not align precisely with those of a would-be intervenor.

True the Vote has shown nothing of the sort of particular circumstances present in *Brumfield*, *American Traffic Solutions*, or *Sierra Club*.  Moreover,

nothing in either *Brumfield* or *American Traffic Solutions* either call into question this Court's analysis in *Hopwood* or relax the showing required under the second presumption. Under the facts of this case, True the Vote has failed to establish, as it must, that the State's representation of its interest may be inadequate.

\* \* \* \* \*

Because True the Vote did not satisfy each requirement for intervention as of right, the district court properly denied its motion under Rule 24(a)(2). To the extent that True the Vote wishes to be heard as to S.B. 14's legality or the remedy the district court should impose if it finds S.B. 14 invalid, the district court has invited it to seek leave to file an amicus brief at an appropriate stage of the litigation. ROA.1358.

# CONCLUSION

This Court should affirm the district court's order denying True the Vote's

motion to intervene as of right under Rule 24(a)(2).

Respectfully submitted,

JOCELYN SAMUELS
  Acting Assistant Attorney General

s/ Erin H. Flynn
DIANA K. FLYNN
ERIN H. FLYNN
  Attorneys
  Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, DC 20044-4403
  (202) 514-5361

## CERTIFICATE OF SERVICE

I certify that on June 2, 2014, I electronically filed the foregoing BRIEF

FOR THE UNITED STATES AS APPELLEE with the Clerk of the Court for the

United States Court of Appeals for the Fifth Circuit by using the appellate

CM/ECF system.

I certify that all participants in this case are registered CM/ECF users and

that service will be accomplished by the appellate CM/ECF system.

<div style="margin-left: 50%;">

s/ Erin H. Flynn
ERIN H. FLYNN
  Attorney

</div>

## CERTIFICATE OF COMPLIANCE

I certify that the attached BRIEF FOR THE UNITED STATES AS APPELLEE:

(1) complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 8,420 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii); and

(2) complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Word 2007, in 14-point Times New Roman font.

s/ Erin H. Flynn
ERIN H. FLYNN
 Attorney

Date:  June 2, 2014