## Case No. 14-40003

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

MARC VEASEY; JANE HAMILTON; SERGIO DELEON; FLOYD CARRIER; ANNA BURNS; MICHAEL MONTEZ; PENNY POPE; OSCAR ORTIZ; KOBY OZIAS; LEAGUE OF UNITED LATIN AMERICAN CITIZENS; JOHN MELLOR-CRUMLEY; DALLAS COUNTY, TEXAS,

*Plaintiffs – Appellees,*

v.

RICK PERRY, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF TEXAS; ET AL.,

*Defendants,*

UNITED STATES OF AMERICA,

*Plaintiff – Appellee,*

TEXAS LEAGUE OF YOUNG VOTERS EDUCATION FUND; IMANI CLARK; TEXAS ASSOCIATION OF HISPANIC COUNTY JUDGES AND COUNTY COMMISSIONERS; AURICA WASHINGTON; CRYSTAL OWENS; MICHELLE BESSIAKE; MARIA LONGORIA BENEVIDES,

*Intervenor Plaintiffs – Appellees,*

v.

STATE OF TEXAS; ET AL,

*Defendants,*

TRUE THE VOTE,

*Movant – Appellant.*

On Appeal from the U.S. District Court for the Southern District of Texas, Corpus Christi Division — USDC No. 2:13-cv-00263 cons w/ USDC No. 2:13-cv 00193.

## REPLY BRIEF FOR MOVANT-APPELLANT TRUE THE VOTE

N. Terry Adams, Jr.
Joseph M. Nixon
Kelly H. Leonard
BEIRNE, MAYNARD & PARSONS, LLP
1300 Post Oak Blvd, Suite 2500
Houston, Texas 77056
(713) 623-0887 Tel.
(713) 960-1527 Fax

James E. "Trey" Trainor, III
BEIRNE, MAYNARD & PARSONS, LLP
401 W. 15th Street, Suite 845
Austin, Texas 78701
(512) 623-6700 Tel.
(512) 623-6701 Fax

Counsel for Movant-Appellant

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................ iii

ARGUMENT .......................................................................... 1

I.  True the Vote Is Entitled To Intervene As A Matter Of Right .......... 1

    A.  True the Vote Has A Particularized Interest In Texas' Voter
       ID Law .................................................................. 2

    B.  If True the Vote Is Not Permitted To Intervene, Its Interests
       Will Be Impaired ...................................................... 8

    C.  True the Vote's Interests Are Not Adequately Represented
       By The State Of Texas .............................................. 11

        1.  Like *Brumfield,* The Two Presumptions Of Adequate
           Representation Do Not Apply In This Case. ...................... 11

        2.  The United States Offers A New Third Presumption
           That This Court Has Not Recognized ............................... 14

CONCLUSION AND PRAYER FOR RELIEF ....................................... 18

CERTIFICATE OF SERVICE .................................................... 20

CERTIFICATE OF COMPLIANCE ................................................ 21

# TABLE OF AUTHORITIES

## Cases

*Aransas Project v. Shaw,*
   404 Fed. Appx. 937 (5th Cir. 2010) ...................................................... 16

*Brumfield v. Dodd,*
   749 F.3d 339 (5th Cir. 2014) ......................................................... passim

*Ceres Gulf v. Cooper,*
   957 F.2d 1199 (5th Cir. 1992) ...................................................... 2, 8, 14

*City of Houston v. American Traffic Solutions,*
   668 F.3d 291 (5th Cir. 2012) ......................................................... passim

*Edwards v. City of Houston,*
   78 F.3d 983 (5th Cir. 1996) .................................................................. 3

*Hollingsworth v. Perry,*
   133 S.Ct. 2652 (2013) ........................................................................ 4, 5

*Hopwood v. Texas,*
   21 F.3d 603 (5th Cir. 1994) ...................................................... 15, 16, 17

*Kneeland v. National Collegiate Athletic Ass'n,*
   806 F.2d 1285 (5th Cir. 1987) ............................................................... 6

*League of United Latin American Citizens, Dist. 19 v. City of Boerne,*
   659 F.3d 421 (5th Cir. 2011) ................................................................. 4

*Mississippi State Chapter Operation Push, Inc. v. Mabus,*
   932 F.2d 400 (5th Cir. 1991) ............................................................... 14

*Ross v. Marshall,*
   426 F.3d 745 (5th Cir. 2005) ......................................................... passim

*Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.,*
   702 F.3d 794 (5th Cir. 2012) ................................................................. 5

*Sierra Club v. Espy,*
   18 F.3d 1202 (5th Cir. 1994) ......................................................... passim

*Sierra Club v. Glickman,*
   82 F.3d 106 (5th Cir. 1996) ............................................................ 7, 16

*Texas v. Holder,*
   888 F.Supp.2d 113 (D.C.D.C. 2012) ..................................................... 4

## Statutes

TEX. ELEC. CODE § 63.0101 ......................................................... 3

## Rules

FED. R. CIV. P. 24(a) .......................................................... passim

## ARGUMENT

## I.   True the Vote Is Entitled To Intervene As A Matter Of Right.

The United States contends the Court's most recent decisions regarding intervention as a matter of right—*Brumfield v. Dodd*, 749 F.3d 339 (5th Cir. 2014) and *City of Houston v. American Traffic Solutions*, 668 F.3d 291 (5th Cir. 2012)—should be disregarded. (Resp. Br. 20).   Instead, the United States stringently re-frames the test to intervene under Rule 24(a)(2) by cherry-picking language from the Court's opinions.[1]

The framework of analysis that the United States creates is technical and at odds with the Court's teaching that "Rule 24 is to be liberally construed." *Brumfield*, 749 F.3d at 342.   It also ignores the Court's instruction that "[i]ntervention should generally be allowed where 'no one would be hurt and greater justice could be attained.'" *Ross v. Marshall*, 426 F.3d 745, 753 (5th Cir. 2005) (citing *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994)).

---

[1] The Veasey-LULAC Plaintiffs-Appellees have adopted the same arguments made by the United States.   The reply brief thus applies to both groups of plaintiffs-appellees.

### A.   True the Vote Has A Particularized Interest In Texas' Voter ID Law.

The United States quotes extensively from *Ross v. Marshall* for the basic requirements of the "interest" element under Rule 24(a)(2), but omits the Court's explanation about how those requirements should be applied. (Resp. Br. 15-16).  Specifically, the Court in *Ross* went on to state that:

> [d]espite these requirements, we have observed that "the interest 'test' is primarily a practical guide to disposing of lawsuits by involving as many concerned persons as is compatible with efficiency and due process."

*Ross*, 426 F.3d at 757 (quoting *Sierra Club v. Espy*, 18 F.3d at 1207 and *Ceres Gulf v. Cooper*, 957 F.2d 1199, 1203 & n. 10 (5th Cir. 1992)).

The United States also tries to pigeonhole True the Vote's interest in this case as just being "electoral integrity," but disregards the fact that the Court rejected a similar effort in *Ceres Gulf* and explained "[w]e need not define Rule 24(a)(2) 'property or transaction' so narrowly." (Resp. Br. 17); *Id.* at 1203.  The United States is thus left with a series of concessions in its brief that cripple its opposition to True the Vote's intervention.

First, the United States does not disagree that the district court failed to conduct a practical analysis of the facts and circumstances surrounding True the Vote's request to intervene, as this Court requires, and instead simply adopted the conclusion from the *Florida* order as its only stated basis to deny True the Vote's right to intervene. (Resp. Br. 17) (TTV Br. 13-15); *see Ross*, 426 F.3d at 753 (*citing Edwards v. City of Houston*, 78 F.3d 983, 999 (5th Cir. 1996)).    This alone warrants reversal.

Second, the United States does not dispute that True the Vote has a particularized interest in the Texas' Voter ID law.[2]    The United States concedes True the Vote successfully advocated for SB 14 before the Texas Legislature and that Texas' Voter ID law impacts True the Vote's activities. TEX. ELEC. CODE § 63.0101[3]; (Resp. Br. 22-23).    The United States also admits it made True the Vote part of the Section 5 case when it used True the Vote's support of Texas' Voter ID law to try to

---

[2]    The United States instead reframes the "interest" element and makes the meaningless assertion that True the Vote lacks a particularized interest "in participating in the litigation below." (Resp. Br. 24).

[3]    Section 63.0101 of the Texas Election Code is Texas' Voter ID law.    The parties below uniformly refer to this law by reference to its senate bill number—SB 14. True the Vote refers to Section 63.0101 of the Texas Election Code as SB 14 or Texas' Voter ID law to comport with the parties' filings.    Despite the designation of Section 63.0101 as SB 14, Texas Voter ID law has been enacted as law and successfully used already for two election cycles.

show the law was enacted with a "discriminatory purpose or intent" by association to True the Vote.[4] (Resp. Br. 6-7, 22-24.)

Relying on *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2662-63 (2013), the United States tries to minimize these undisputed facts by contending they do not show that True the Vote has an individualized injury or a personal stake in the outcome of the case.[5] (Resp. Br. 19-20). That, however, is not the correct legal standard for intervention. Indeed, *Hollingsworth* is inapposite. It addresses Article III standing, not intervention under Rule 24(a)(2). *Id.* Article III standing does not apply to True the Vote's right to intervene in this case.[6]

---

[4] The United States admits True the Vote raised its support of SB 14 in its motion to intervene and complained in its motion that the United States had used True the Vote's support of SB 14 in *Texas v. Holder* as evidence the law was enacted with a discriminatory purpose. (Resp. Br. 6-7, 19, 22-24). Yet, the United States argues True the Vote did not develop the issue extensively enough below. (Resp. Br. 19). The test for preservation is whether a point was raised in the district court. The United States concedes True the Vote did so. The United States' preservation contentions are without merit.

[5] The United States also tries to minimize these facts by asserting True the Vote did not seek to intervene in the Section 5 case in the D.C. District Court or object to discovery in that case. *See Texas v. Holder*, 888 F.Supp.2d 113 (D.C.D.C. 2012); (Resp. Br. 23). That is also a smoke screen argument. It bears no relevance to True the Vote's right to intervene in *this case* in the Southern District of Texas.

[6] A would-be intervenor must demonstrate Article III standing *only* if it "is not seeking any relief that is 'also being sought by at least one subsisting party with standing to do so.'" *League of United Latin American Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 428 (5th Cir. 2011). That is not the situation here. In fact, the United States has argued the opposite in its brief. (Resp. Br. 29).

For that reason, the United States' further assertion that *Brumfield* and *American Traffic Solutions* are "flatly contradict[ed]" by *Hollingsworth* is also without merit. (Resp. Br. 20).  In *Brumfield*, the Court explained the "interest" requirement under Rule 24(a)(2) may be judged by a more lenient standard when "the case involves a public interest question or is brought by a public interest group." 749 F.3d at 344.  The more lenient standard is similar to the zone-of-interest analysis for prudential standing.[7] *Id*.

The United States argues *Hollingsworth* supersedes the zone-of-interest analysis for a would-be intervenor like True the Vote. (Resp. Br. 19-20).  But, *Hollingsworth* does not address prudential standing or the zone-of-interest analysis or even intervention as a matter of right. *Brumfield* and *American Traffic Solutions* are still controlling precedent for this case.

Because there is no dispute that the vitality of Texas' Voter ID law involves a public interest question, the "interest" requirement under

---

[7]  Article III standing enforces the Constitution's case-or-controversy requirement, while prudential standing embodies "judicially self-imposed limits on the exercise of federal jurisdiction." *Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 801 (5th Cir. 2012). Prudential standing encompasses the general prohibition on a litigant raising another person's legal rights and the requirement that a litigant's complaint fall within the zone of interests protected by the law invoked.  *Id.*

Rule 24(a)(2) can be judged more leniently in this case. Like the parents in *Brumfield*, True the Vote is clearly within the zone of parties interested in the litigation surrounding Texas' Voter ID Law. True the Vote urged the Texas Legislature to pass SB 14 based on its documentation of suspected in-person voter fraud. True the Vote has also relied upon Texas' Voter ID law in conducting its operations during the past two election cycles.

Furthermore, like the intervenors in *American Traffic Solutions*, True the Vote successfully advocated for SB 14, and its support of Texas' Voter ID law has been woven into the fabric of the underlying case. *See American Traffic Solutions*, 668 F.3d at 294; *accord Kneeland v. National Collegiate Athletic Ass'n*, 806 F.2d 1285, 1288 (5th Cir. 1987) (acknowledging universities had an interest in litigation where documents to be disclosed under Texas Open Records Act concerned universities' football recruiting practices, although universities did not satisfy other intervention requirements). The United States identified several exhibits concerning True the Vote's support of Texas' Voter ID law in the preclearance case. (RE.11, 12, 13). The United States also

relied on these materials to suggest SB 14 was enacted with discriminatory purpose.

It is thus undeniable that True the Vote has a particular interest in Texas' Voter ID law and in rebutting the United States' efforts to use True the Vote's support of SB 14 as purported evidence the statute is unconstitutional. *See American Traffic Solutions*, 668 F.3d at 294; *see also Sierra Club v. Glickman*, 82 F.3d 106, 109 (5th Cir. 1996) (farmers subject of Sierra Club's suit against Department of Agriculture permitted to intervene because farmers were subject of suit and real parties in interest with respect to it). The United States' lawsuit threatens True the Vote's activities and its non-partisan mission. On the other hand, it is uncontroverted the United States would not be hurt and greater just could be attained by True the Vote's intervention.

Accordingly, when the "interest" element under Rule 24(a)(2) is properly applied as a practical guide for "involving as many concerned persons as is compatible with efficiency and due process," True the Vote's interest in Texas' Voter ID law is more than sufficient to intervene in this case as a matter of right. *See Ross*, 426 F.3 at 757.

7

**B.    If True the Vote Is Not Permitted To Intervene, Its Interests Will Be Impaired.**

The United States recognizes an adverse decision in this case—one striking down Texas' Voter ID law—may impact how True the Vote carries out its activities. (Resp. Br. 25). However, the United States contends True the Vote must meet a higher standard and demonstrate that an adverse decision "will" impair or impede its interests. (Resp. Br. 25-26). That misstates the "impairment" test under Rule 24(a)(2).

As this Court recently explained in *Brumfield*, the correct analysis is whether an adverse decision *may*, as a practical matter, impair or impede an intervenors' ability to protect its interests. *Brumfield*, 749 F.3d at 344. The requirement is not so inflexible as to demand that the movant establish that its interests *will* be impaired. *Id.* This is because intervention favors permitting interested parties to air their views so that a court may consider them before making potentially adverse decisions. *Id.* at 345; *Ceres Gulf*, 957 F.2d at 1202.

True the Vote meets this test. Texas' Voter ID law has already been in place for two election cycles. True the Vote has relied on Texas' Voter ID law since its enactment as part of its programs. The requested relief in this lawsuit has the potential to eliminate Voter ID entirely.

The United States concedes that such an outcome *might* impact how True the Vote conducts its activities. (Resp. Br. 24-25).

This Court has long permitted intervention based on likely impairment. For example, the parents in *Brumfield* opposed (1) the federal government's petition for an injunction preventing Louisiana "from awarding [their children] school vouchers . . . unless and until the State receive[d] authorization from the appropriate federal court overseeing the desegregation case" and (2) its later request for "the creation of a process under which the State would provide the information needed to assess and monitor the voucher program's implementation." *Brumfield*, 749 F.3d at 341.

While the requested relief would not necessarily void the existing voucher program, it had the *potential* to adjust *some* elements of the program. *Id.* at 345-46. Any such adjustment *may* have impacted how the parents in *Brumfield* made educational choices for their children. *Id.* Therefore, the litigation threatened a prospective interference with existing educational opportunities. *Id.* Here, too, True the Vote's existing activities—which utilize a law it fought to enact—*may* likely be threatened.

True the Vote may also be placed at a practical disadvantage as an advocate of Voter ID in Texas (and elsewhere) if the district court concludes Texas' Voter ID law should be struck down. Moreover, the stare decisis effect of any opinion holding the law unconstitutional may be relied on by opponents of Voter ID to defeat future attempts to draft a bill passing constitutional muster or in future litigation. Stare decisis may supply the practical disadvantage that is required for intervention under Rule 24(a)(2). *See, e.g., Sierra Club v. Espy*, 18 F.3d at 1207.

In a final effort to avoid the case law that requires only the possibility of practical impairment, the United States suggests that True the Vote's support of a more permissive Voter ID law is evidence True the Vote will not be disadvantaged by this lawsuit. (Resp. Br. 25). That argument flatly ignores the realities of this case. The United States has sued Texas to strike down Texas' Voter ID law. It has asked the district court to appoint federal observers to monitor Texas' elections and to rule that Texas remain bound as a covered jurisdiction. The United States does not contemplate any remedy short of these goals and it will use the full resources of the federal government to achieve them.

It is disingenuous to suggest True the Vote's contemplated legislation may, standing alone, protect its interests in this case.

True the Vote established its interests may likely be impaired by an adverse decision in this case. The United States concedes an order striking down Texas Voter ID law may change how True the Vote carries out its activities. Even if the "impairment" question were a close one (and it is not), intervention cases uniformly hold that intervention should "be allowed where 'no one would be hurt and greater justice could be attained.'" *Ross*, 426 F.3d at 753. That is the situation here with True the Vote.

### C. True the Vote's Interests Are Not Adequately Represented By The State Of Texas.

The threshold for inadequate representation is "minimal." *Brumfield*, 749 F.3d at 345. To ensure this "minimal" requirement has meaning, the law recognizes two presumptions of adequate representation. Neither applies here.

### 1. Like *Brumfield*, The Two Presumptions Of Adequate Representation Do Not Apply In This Case.

The first presumption arises if one party is a representative of the absentee by law. *Id.* at 345. The United States' assertion that this presumption applies is without merit. (Resp. Br. 27). There has been no

showing or suggestion in this case that the State of Texas is the legal representative of True the Vote and indeed it is not. *See id.* (concluding Louisiana did not represent intervenor-defendants as absentees by law).

The second presumption only "arises when the would-be intervenor has the same ultimate objective as a party to the lawsuit," in which event "the applicant for intervention must show adversity of interest, collusion, or nonfeasance on the part of the existing party to overcome the presumption." *Id.* (citations omitted). This presumption is inapplicable because the State of Texas represents broader interests than True the Vote. Again, *Brumfield* is instructive:

> [T]here are two presumptions of adequate representation. The first arises where one party is a representative of the absentee by law. . . . The second presumption "arises when the would-be intervenor has the same ultimate objective as a party to the lawsuit," in which event "the applicant for intervention must show adversity of interest, collusion, or nonfeasance on the part of the existing party to overcome the presumption." The second presumption does not apply here. Although both the state and the parents vigorously oppose dismantling the voucher program, their interests may not align precisely.

*Id.* at 345 (relying on *Sierra Club v. Espy*, 18 F.3d at 1207-08).

In this case, the State of Texas and True the Vote do not share a unity of interest. Texas has broader interests at stake in this case than

True the Vote.  Texas has interests in cultivating its relationship with the federal government and the courts that have continuing jurisdiction over voting rights matters. True the Vote does not share these interests.

For further example, Texas did not offer evidence its voter rolls contain vast numbers of ineligible, dead and duplicate voters to support SB 14 in the preclearance litigation. Inadequately maintained voter rolls are a key purpose for the enactment of SB 14.  Texas has no incentive to offer such evidence because it may constitute an admission that Texas, or counties within Texas, are not complying with the National Voter Registration Act. (ROA.472). True the Vote does not share that concern.

Like the parents in *Brumfield*, True the Vote has staked out different positions from Texas.  For example, the federal government has made True the Vote part of this litigation by citing its support of Texas' Voter ID law as evidence it was enacted with discriminatory purpose. (RE.7-13). True the Vote intends to confront the suggestion that its support of SB 14 reveals an improper purpose behind Texas' Voter ID law. (ROA.5846).  Only True the Vote can adequately address

and rebut adverse inferences other parties would draw from its support of Texas' Voter ID law.

Finally, True the Vote offers options for a remedy in this case that Texas is unlikely to champion. Based on its proposal to the Texas Legislature, True the Vote can show that more options of Voter ID may be included in a Voter ID bill without sacrificing the important role Voter ID plays in deterring and detecting voter fraud. This perspective may assist the district court in exercising its substantial remedial powers under the Voting Rights Act. *See Mississippi State Chapter Operation Push, Inc. v. Mabus*, 932 F.2d 400, 401-402, 405-406 (5th Cir. 1991). Accordingly, under Rule 24(a)(2), True the Vote has a right to intervene in this important case and provide the district court with its views and important information and options so that greater justice can be attained. *See Ross*, 426 F.3d at 745; *Ceres Gulf*, 957 F.2d at 1202.

### 2.    The United States Offers A New Third Presumption That This Court Has Not Recognized.

The United States argues that *Hopwood v. Texas*, 21 F.3d 603 (5th Cir. 1994) created a third, conclusive presumption of adequate representation when a governmental entity is party to a case. (Resp. Br. 28-30.) That is incorrect. Rather, *Hopwood* fits within the long line of

cases recognizing that a governmental entity cannot represent the discrete interests of intervenors when the government has different, broader interests at stake in the litigation. That line of cases culminates in *American Traffic Solutions* and *Brumfield*.

In *Hopwood v. Texas*, the Court denied intervention to two African-American student associations that asked to participate in a reverse discrimination case against the University of Texas School of Law. 21 F.3d at 604. The student associations, Thurgood Marshall Legal Society and Black Pre-Law Association, sought to defend the law school's affirmative action policy, which considered race as part of its admission process. *Id.* The Court considered whether the student associations demonstrated Texas would not represent their claimed interests in the litigation. It concluded, "[the student associations] have not met their burden of demonstrating that they have a separate interest that the State will not adequately represent. . . . Nor have the proposed intervenors shown that they have a separate defense of the affirmative action plan that the State has failed to assert." *Id.* at 606.

Nothing in *Hopwood* announces a new, conclusive presumption of adequate representation. The *Hopwood* court considered the student

associations' motion under the same test for intervention used in *Brumfield* and *American Traffic Solutions*. That long-standing test requires an intervenor to show an interest in the litigation that the existing parties may not represent. *See, e.g., Hopwood*, 21 F.3d at 605 (requiring intervenor-defendant to show particular interest in litigation existing government defendant may not represent); *Sierra Club v. Espy*, 18 F.3d 1202, 1207-08 (5th Cir. 1994) (same); *Sierra Club v. Glickman*, 82 F.3d 106, 110 (5th Cir. 1996) (same); *Aransas Project v. Shaw*, 404 Fed. Appx. 937, 941 (5th Cir. 2010) (same); *City of Houston v. American Traffic Solutions*, 668 F.3d 291, 293-94 (5th Cir. 2012) (same); *Brumfield*, 749 F.3d at 346-47 (same). The test is satisfied when, as here, the governmental entity has broader concerns at issue in the litigation and may fail to represent the intervenor's narrow (and different) interests by articulating its legal arguments and defenses. *Brumfield*, 749 F.3d at 346-47.

The United States offers no analysis of how its perceived *Hopwood* standard is conceptually or functionally distinct from the dual presumptions considered and rejected by the Court in *Brumfield* and

*American Traffic Solutions.*  *Brumfield* and *American Traffic Solutions* both involved groups seeking to intervene to defend state laws.

In both cases, the state was an existing defendant in the litigation. The Court nevertheless permitted intervention in both cases, requiring that the movant-intervenor show their interest may be inadequately represented by the state defendants.  True the Vote fits the paradigms of *Brumfield* and *American Traffic Solutions*, including their holdings with respect to inadequate representation.

Contrary to the United States' assertion, the presence of a governmental entity does not give rise to a conclusive presumption of adequate representation.  Far from it.  In *Brumfield,* the Court explained that the second presumption *does not apply at all* when a governmental entity and intervenor do not share a unity of interests, although both seek to defend the same law:

> [I]t is not evident that the ultimate-objective presumption of adequate representation even applies because the state has more extensive interests to balance than do the [movants].  The lack of unity in all objectives combined with real and legitimate additional or contrary arguments, is sufficient to demonstrate that the representation *may* be inadequate, so this requirement of Rule 24(a) is met.

*Brumfield*, 749 F.3d at 346.

Here, too, the ultimate-objective presumption of adequate representation does not apply because Texas has more extensive interests to balance in this constitutional challenge than does True the Vote. Lack of unity in all of Texas' and True the Vote's objectives combined with real and legitimate additional arguments by True the Vote, as detailed in its briefing, demonstrates that the representation may be inadequate. True the Vote has established its right to intervene in this litigation.

## CONCLUSION AND PRAYER FOR RELIEF

True the Vote satisfies the elements under Rule 24(a)(2) to intervene as a matter of right in the underlying litigation. It is also uncontroverted that "no one would be hurt and greater justice could be attained" by True the Vote intervening. Accordingly, True the Vote respectfully requests that the district court's denial of its motion to intervene as a matter of right be reversed. True the Vote additionally requests such other and further relief to which it may be justly entitled.

Respectfully submitted,

/s/    *N. Terry Adams. Jr.*

Joseph M. Nixon                          James E. "Trey" Trainor, III
Texas State Bar No. 15244800             Texas State Bar No. 24042052
jnixon@bmpllp.com                        ttrainor@bmpllp.com
N. Terry Adams, Jr.                      BEIRNE, MAYNARD & PARSONS, LLP
Texas State Bar No. 00874010             401 W. 15th Street, Suite 845
tadams@bmpllp.com                        Austin, Texas 78701
Kelly H. Leonard                         (512) 623-6700   Tel.
Texas State Bar No. 24078703             (512) 623-6701   Fax
kleonard@bmpllp.com
BEIRNE, MAYNARD & PARSONS, LLP
1300 Post Oak Blvd, Suite 2500
Houston, Texas  77056
(713) 623-0887   Tel.
(713) 960-1527   Fax

**Counsel for Movant-Appellant**
**True the Vote**

# CERTIFICATE OF SERVICE

By filing electronically, I certify that service was accomplished through the Notice of Electronic Filing for parties and counsel who are Filing Users and that service was accomplished on any party who is not a Filing User in accordance with the Federal Rules and the Local Rules on July 7, 2014.

*/s/ N. Terry Adams, Jr.*
N. Terry Adams, Jr.

Anna Baldwin
John Albert Smith III
U.S. Department of Justice
NWB 7273
950 Pennsylvania Avenue NW
Washington, DC 20530
F: 202-514-8490
Anna.baldwin@usdoj.gov

Christina A. Swarns
NAACP Legal Defense Fund
40 Rector Street, 5th Floor
New York, NY 10006
F: 212-229-7592
cswarns@naacpldf.org

Erin Flynn
U.S. Department of Justice
RFK Room 3742
950 Pennsylvania Avenue NW
Washington, DC 20530
F: 202-514-8490
Erin.flynn@usdoj.gov

Chad W. Dunn
Brazil & Dunn
4201 Cypress Creek
Suite 530
Houston, TX 77068
F: 281-580-6310
chad@brazilanddunn.com

Diana Flynn
U.S. Department of Justice
PO Box 14403
Ben Franklin Station
Washington, DC 20044
F: 202-514-8490
Diana.k.flynn@usdoj.gov

Gerard J. Sinzdak
Wilmer, Cutler, Pickering, Hale & Dorr LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Gerard.sinzdak@wilmerhalte.com

John Albert Smith, III                     Rolando Leo Rios, I,
U.S. Attorney's Office                     115 E. Travis Street
800 N. Shoreline Boulevard                 Suite 1645
Suite 500                                  San Antonio, Texas 78295
Corpus Christi, Texas 78401                F: 210-222-2898
F: 361-888-3200                            rrios@rolandorioslaw.com
John.a.smith@usdoj.gov

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of FED.
R. APP. P. 32(a)(7)(B) because:

- this brief contains 3,830 words, excluding the parts
  of the brief exempted by FED R. APP. P.
  32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of FED. R.
APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P.
32(a)(6) because:

- this brief has been prepared in a proportionally
  spaced typeface using Microsoft Word 2010 in 14
  point New Century Schoolbook font.

*/s/  N. Terry Adams, Jr.*
N. Terry Adams, Jr.

**Counsel for Movant-Appellant**

Dated: July 7, 2014

21